ORRY P. KORB, County Counsel (S.B. #114399)
KARL A. SANDOVAL, Lead Deputy County Counsel (S.B. #170190)
GREGORY J. CHARLES, Deputy County Counsel (S.B. #208583)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendants
COUNTY OF SANTA CLARA, DOUGLAS
ULRICH and LAURIE SMITH

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Jose)

| | |
|---|---|
| SEAN ALLEN, et al., | No. 14-CV-03829 BLF |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| COUNTY OF SANTA CLARA, et al., | |
| Defendants. | |

Date:       July 28, 2016
Time:       9:00 A.M.
Courtroom: 3, 5th Floor
Judge:       Honorable Beth Labson Freeman

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **July 28, 2016, at 9:00 a.m.,** or as soon thereafter as the

matter may be heard in **Courtroom 3** of the above-entitled Court, located at 280 South First Street,

San Jose, California 95113, Defendants County of Santa Clara, Sheriff Laurie Smith and Douglas

Ulrich (collectively, "Defendants") will, and hereby do, move this Court: (1) for an order granting

summary judgment; and, (2) as to plaintiffs Trbovich and Santos's fourth cause of action, for

judgment on the pleadings or, in the alternative, summary judgment.  This motion for summary

judgment is based on the grounds that plaintiffs were not discriminated against based on any

protected status; were not retaliated against based on any protected activity; were not sexually or

1

1  racially harassed; suffered no adverse employment actions as a result of protected activity; that there

2  were legitimate, non-discriminatory grounds for any adverse employment actions; that plaintiffs

3  have no admissible evidence to support their slander claim; that there was no conduct entitling them

4  to punitive damages; and based on <u>res judicata</u> and collateral estoppel.  This motion for judgment on

5  the pleadings is based on plaintiffs' failure to state a cause of action for slander.

6          This motion is based on this Notice of Motion and Motion for Summary Judgment; this

7  Notice of Motion and Motion for Judgment on the Pleadings; the Memorandum of Points and

8  Authorities in Support thereof, the Declarations of Karl A. Sandoval, Michael Doty, Patrick Corso,

9  Sherae Moresco and Mark Paschal and the exhibits in support of same; the Request for Judicial

10  Notice; the papers and pleadings on file in this action; and other oral and/or documentary evidence

11  as may be presented at the hearing of this motion.

12

13  Dated:  June 23, 2016                                          Respectfully submitted,

14                                                                              ORRY P. KORB
                                                                              COUNTY COUNSEL
15

16                                                          By:    /S/   Karl A. Sandoval
                                                                              KARL A. SANDOVAL
17                                                                              Lead Deputy County Counsel

18                                                                              Attorneys for Defendants
                                                                              COUNTY OF SANTA CLARA, DOUGLAS
19                                                                              ULRICH and LAURIE SMITH

20

21

22

23

24

25

26

27

28

2

1

## **Table of Contents**

2

I. INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................2

    A.    TRBOVICH ..............................................................................................2

        1.    Trbovich enters the correctional academy. ....................................2

        2.    Trbovich took offense to Ulrich's management style but she did not complain of sexual harassment until September 2012.  Trbovich admits starting a sexual relationship with her former inmate, V. T., the day he was released from custody, leading to her paid administrative leave and termination ...............................................................3

        3.    Trbovich admits that Ulrich did not sexually harass her ...............5

        4.    Trbovich is investigated and placed on paid administrative leave .............6

        5.    Trbovich's DFEH Charge alleges discrimination beginning on January 9, 2012 ..............................................................................6

        6.    Trbovich's second DFEH charge was expressly limited to claims against Ulrich beginning on January 9, 2012...............................6

        7.    An arbitrator upheld Trbovich's termination, finding that the County had just cause to terminate her.  Trbovich did not challenge the arbitrator's award, which was confirmed by the Santa Clara County Superior Court................................................................................6

        8.    DFEH dismissed Trbovich's third charge, which was limited to Ulrich claims ...............................................................................7

    B.    SANTOS ...................................................................................................7

        1.    Santos's DFEH charge....................................................................7

        2.    Santos's testimony .........................................................................7

        3.    Santos was charged and convicted of perjury and grand theft.  She resigned ..........................................................................................8

    C.    ALLEN ....................................................................................................8

        1.    Allen previously sued, unsuccessfully, on many of these same claims......8

        2.    Most of Allen's claims, if not already litigated, are time-barred................9

        3.    Allen's adminstrative charge .......................................................10

III. ARGUMENT....................................................................................................10

    A.    SUMMARY JUDGMENT STANDARD ............................................10

    B.    BEFORE FILING A FEHA COMPLAINT, PLAINTIFFS MUST EXHAUST THEIR ADMINISTRATIVE REMEDIES BY FILING A DFEH CLAIM WITHIN ONE YEAR OF ALLEGED CONDUCT.  ALL FEHA ACTIONS BASED ON EVENTS THAT OCCURRED MORE THAN ONE YEAR BEFORE PLAINTIFFS' DFEH CLAIMS ARE BARRED.  EVEN IF THEIR DFEH CLAIMS ARE OTHERWISE TIMELY, PLAINTIFFS HAVE WAIVED ALL COMPLAINTS NOT IN THE DFEH CLAIM ..........................10

        1.    Plaintiffs must exhaust their administrative remedies by timely filing DFEH charges before filing a suit alleging FEHA claims........................10

i

2.  Trbovich's FEHA claims pertaining to events between 1995 and the end of 2011 are barred by her failure to timely file DFEH claims regarding such events. ..................................................................................11

3.  Santos's and Allen's DFEH claims bar them from recovery on claims arising earlier than one year before the date they filed their claims ..........12

C.  PLAINTIFFS' WRONGFUL TERMINATION CLAIMS FAIL. ALLEN HAS NOT BEEN TERMINATED, SANTOS RESIGNED AND A WRONGFUL TERMINATION CLAIM DOES NOT STAND AGAINST DEFENDANTS. AS A MATTER OF LAW, THERE WAS JUST CAUSE FOR TRBOVICH'S TERMINATION, WHICH WAS ACTUALLY LITIGATED IN ARBITRATION AND PROVES A LEGITIMATE, NON-DISCRIMINATORY BASIS FOR THE DECISION TO TERMINATE HER....12

1.  Santos and Allen cannot state a claim for wrongful termination and the individual Defendants cannot be held liable for wrongful termination .....12

2.  Plaintiffs cannot state a wrongful termination claim against the County ..13

3.  The facts surrounding Trbovich's termination were litigated in her arbitration hearing. The arbitration award, which found that the County had just cause to terminate her, was confirmed by the Superior Court. Trbovich is collaterally estopped from relitigating the claim that her termination was wrongful. ...........................................................13

D.  RES JUDICATA AND COLLATERAL ESTOPPEL BAR MANY ALLEN CLAIMS ................................................................................................14

E.  PLAINTIFFS' RETALIATION AND DISCRIMINATION CLAIMS FAIL ......14

1.  The individual Defendants cannot be liable for retaliation or discrimination ...............................................................................14

2.  The three-stage burden shifting test in discrimination and retaliation claims ..........................................................................................15

3.  Trbovich cannot establish a prima facie case of retaliation or discrimination ...............................................................................15

4.  The County had legitimate, non-retaliatory reasons for terminating Trbovich ......................................................................................17

5.  The County had legitimate, non-retaliatory, non-discriminatory reasons for any adverse employment actions involving Allen .................17

6.  Santos resigned and cannot prevail on an unpled claim of retaliatory prosecution – her conviction proves there was probable cause for her to be prosecuted ............................................................................19

F.  PLAINTIFFS' SEXUAL AND RACIAL HARASSMENT CLAIMS FAIL........20

G.  PLAINTIFFS' AFFIRMATIVE ACTION CLAIM FAILS AS A MATTER OF LAW ...........................................................................................21

H.  PLAINTIFFS TRBOVICH AND SANTOS DID NOT ADEQUATELY PLEAD AND CANNOT ESTABLISH THEIR FOURTH CAUSE OF ACTION FOR SLANDER ..................................................................22

I.  PLAINTIFFS CANNOT ESTABLISH A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ULRICH OR SHERIFF SMITH ...........................................................................23

J.  THERE WAS NO RETALIATION IN VIOLATION OF THE FIRST AMENDMENT......................................................................................25

K.      DEFENDANTS ARE NOT LIABLE FOR PUNITIVE DAMAGES ...................27

L.      PLAINTIFFS CANNOT ESTABLISH THEIR MONELL CLAIMS...................27

IV. CONCLUSION.........................................................................................................299

Notice of Motion and Motion for Summary Judgment;                                    14-CV-03829 BLF
Memorandum of Points and Authorities

1

## <u>Table of Authorities</u>

2

<u>CASES</u>

3

4

<u>Adickes v. S. H. Kress & Co.</u>
   398 U.S. 144 (1970) ................................................................................................ 10

5

<u>Aguilar v. Avis Rent A Car System, Inc.</u>
   21 Cal. 4th 121 (1999) ............................................................................................ 20

6

7

<u>American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton</u>
   96 Cal.App.4th 1017 (2002) .................................................................................... 27

8

<u>Bd. of County Com'rs of Bryan County, Okl. v. Brown</u>
   520 U.S. 397 (1997) ................................................................................................ 28

9

10

<u>Beck v. City of Upland</u>
   527 F.3d 853 (9th Cir. 2008) ................................................................................... 19

11

<u>Bergstralh v. Lowe</u>
   504 F.2d 1276 (9th Cir. 1974) ................................................................................. 19

12

13

<u>Blum v. Cnty. of Alameda, Dep't of Soc. Servs.</u>
   2003 WL 21518112 (N.D. Cal. June 24, 2003) ...................................................... 11

14

<u>Celotex Corp. v. Catrett</u>
   477 U.S. 317 (1986) ................................................................................................ 10

15

16

<u>City of Canton, Ohio v. Harris</u>
   489 U.S. 378 (1989) ................................................................................................ 28

17

<u>Clark County Sch. Dist. v. Breeden</u>
   532 U.S. 268 (2001) ................................................................................................ 15

18

19

<u>Connick v. Myers</u>
   461 U.S. 138 (1983) ................................................................................................ 26

20

<u>Coral Const., Inc. v. City and County of San Francisco</u>
   50 Cal. 4th 315 (2010) ............................................................................................ 21

21

22

<u>Corales v. Bennett</u>
   488 F.Supp.2d 975 (C.D. Cal. 2007) ................................................................. 24, 27

23

<u>Cozalter v. City of Salem</u>
   320 F.3d 968 (9th Cir. 2002) ................................................................................... 16

24

25

<u>Cucuzza v. City of Santa Clara</u>
   104 Cal.App.4th 1031 (2002) .................................................................................. 11

26

<u>Curcini v. County of Alameda</u>
   164 Cal.App.4th 629 (2008) .................................................................................... 22

27

28

<u>Davis v. City of Ellensburg</u>
   869 F.2d 1230 (9th Cir. 1989) ................................................................................. 28

iv

Davison ex rel. Sims v. Santa Barbara High Sch. Dist.
  48 F.Supp.2d 1225 (C.D. Cal. 1998) .......................................................... 23

EEOC v. Farmer Bros. Co.
  31 F.3d 891 (9th Cir.1994) ........................................................................ 10

Eng v. Cooley
  552 F. 3d 1062 (9th Cir. 2009) ................................................................... 26

Fleming v. AC Square, Inc.
  No. 5:11-CV-01830 EJD, 2012 WL 1868915 (N.D. Cal. May 22, 2012).................. 18

Garrett v. City and County of San Francisco
  818 F.2d 1515 (9th Cir.1987) .................................................................... 13

Guz v. Bechtel Nat. Inc.
  24 Cal.4th 317 (2000) ......................................................................... 14, 16

Guzman v. Cty. of Monterey
  46 Cal. 4th 887 (2009) .............................................................................. 13

Harris v. Forklift Systems, Inc.
  510 U.S. 17 (1993) ................................................................................... 20

Hartman [v. Moore
  (2006) 547 U.S. 250 ................................................................................. 19

Hawn v. Executive Jet Mgmt., Inc.
  615 F.3d 1151 (9th Cir. 2010) .................................................................... 15

Hecimovich v. Encinal School Parent Teacher Organization
  203 Cal.App.4th 450 (2012) ................................................................. 21, 22

Helgeson v. American International Group, Inc.
  44 F.Supp.2d 1091 (S.D. Cal. 1999) ...................................................... 15, 17

Hi-Voltage Wire Works, v. City of San Jose
  24 Cal. 4th 537 (2000) .............................................................................. 21

Huskey v. City of San Jose
  204 F.3d 893 (9th Cir. 2000) ..................................................................... 26

Janken v. GM Hughes Electronics
  46 Cal. App. 4th 55 (1996) ........................................................................ 24

Jones v. Dep't of Corr. & Rehab.
  152 Cal.App.4th 1367 (2007) ..................................................................... 14

Jones v. Lodge at Torrey Pines Partnership
  42 Cal. 4th 1158 (2008) ............................................................................ 14

Kemmerer v. Cnty. of Fresno
  200 Cal.App.3d 1426 (1988) ................................................................. 23, 25

v

*Kennedy v. Applause, Inc.*
90 F.3d 1477 (9th Cir.1996) ................................................................................ 19

*Kremer v. Chemical Constr. Corp.*
456 U.S. 461 (1982) .......................................................................................... 13

*Maridon*
2013 WL 1786592 (N.D. Cal. Apr. 25, 2013) ................................................ 11, 12

*Miklosy v. Regents of University of California*
44 Cal. 4th 876 (2008) ................................................................................... 12, 13

*Monell v. Dep't of Soc. Services of City of New York*
436 U.S. 658 (1978) .......................................................................................... 27

*Morgan v. Regents of Univ. of Cal.*
88 Cal.App.4th 52 (2000) ............................................................................... 15, 19

*Nelson v. Pima Community College*
83 F.3d 1075 (9th Cir. 1996) ............................................................................ 26

*Nidds v. Schindler Elevator Corp.*
113 F.3d 912 (9th Cir. 1996.) ........................................................................ 15, 16

*Nishimoto v. Federman-Bachrach & Assoc.*
903 F.2d 709 (9th Cir. 1990) ............................................................................ 11

*Paterson v. City of Los Angeles*
174 Cal.App.4th 1393 (2009) ....................................................................... 23, 24

*Reno v. Baird*
18 Cal. 4th 640 (1997) ...................................................................................... 14

*Robinson v. York*
566 F.3d 817 (9th Cir. 2009) ............................................................................ 26

*Roby v. McKesson Corp.*
47 Cal.4th 686 (2009) ....................................................................................... 27

*Rodriguez v. Airborne Express,*
265 F.3d 890 (9th Cir. 2001) ............................................................................ 11

*Rojo v. Kliger,*
52 Cal. 3d 65 (1990) ......................................................................................... 10

*Shaw v. Hahn,*
56 F.3d 1128 (9th Cir. 1995) ............................................................................ 14

*State Dept. of Health Servs. v. Superior Court*
31 Cal. 4th 1026 (2003) .................................................................................... 20

*Thomas v. Dept. of Corrections*
77 Cal.App.4th 507 (2000) ............................................................................... 17

*Thomas v. Douglas*
877 F.2d 1428 (9th Cir. 1989) ..................................................................... 26, 27

Thompson v. City of Monrovia
    186 Cal.App.4th 860 (2010) ................................................................................. 17

Thornton v. City of St. Helens
    425 F.3d 1158 (9th Cir.2005) ............................................................................... 19

Western Radio Servs. Co. v. Glickman
    123 F.3d 1189 (9th Cir. 1997) .............................................................................. 14

Yanowitz v. L'Oreal USA, Inc.
    36 Cal. 4th 1028............................................................................................... 15

STATUTES

28 U.S.C.A. §1738 ..................................................................................................... 13

42 U.S.C. § 1983 ....................................................................................................... 28

Article I, section 31 of the California Constitution............................................................ 21

Cal. Code Civ Proc. § 1288 .......................................................................................... 7

Cal. Code Civ. Proc. § 340(c) ....................................................................................... 22

Cal. Gov't Code § 815 ............................................................................................... 13

Cal. Gov't Code § 815(a) ........................................................................................... 23

Cal. Gov't Code § 815.2(b).......................................................................................... 23

Cal. Gov't Code § 818 ............................................................................................... 27

Cal. Gov't Code § 820.2 ........................................................................................ 23, 25

Cal. Gov't Code § 821.6 ............................................................................................. 25

Cal. Gov't Code § 822.2 ............................................................................................. 22

Cal. Gov't Code §§ 901, 911.2 ............................................................................ 22, 23, 25

Cal. Gov't Code § 12926(d) ......................................................................................... 14

Cal. Gov't Code § 12940 ............................................................................................. 15

Cal. Gov't Code § 12940(a) ......................................................................................... 14

Cal. Gov't Code § 12940(h).......................................................................................... 15

Cal. Gov't Code § 12960 ............................................................................................. 10

Cal. Gov't Code § 12965 ............................................................................................. 10

Cal. Penal Code §§ 118, 134......................................................................................... 8

California Civil Code § 3294 ......................................................................................... 27

1    <u>RULES</u>

2    Fed. R. Civ. Proc. 12(b)(6) ............................................................................................................. 19

3    Fed. R. Civ. Proc. 15(d) ................................................................................................................... 19

4    Fed. R. Civ. Proc. 56(c) ................................................................................................................... 10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion for Summary Judgment;                                    14-CV-03829 BLF
Memorandum of Points and Authorities

# I.

## INTRODUCTION

Plaintiffs Jona Trbovich, Shonda Santos and Sean Allen are former and current correctional officers with the County's Department of Correction.  They bring this consolidated discrimination and retaliation action against the County, Sheriff Laurie Smith,[1] retired Sgt. Michael Morin and Sgt. Douglas Ulrich.  Defendants seek summary judgment on all claims in the <u>Trbovich</u> and <u>Allen</u> Complaints:

(1)    On the First, Second, Third, and Sixth Causes of Action (<u>Trbovich</u>) for sexual harassment, and the First, Second, Third and Fifth Causes of Action (<u>Allen</u>) for racial harassment, Trbovich and Allen fail to establish that they were subjected to unlawful harassment;

(2)    On the First, Second, Third and Sixth Causes of Action (<u>Trbovich</u>) for gender discrimination, and the First, Second, Third and Fifth Causes of Action (<u>Allen</u>) for race discrimination, (a) the County had a legitimate, non-retaliatory reason for terminating Trbovich, she cannot establish pretext and she is collaterally estopped from arguing that her termination was unlawful; (b) Santos cannot prevail on her unpled "retaliatory prosecution" claim, and she has no evidence of an adverse employment action; and, (c) the County had non-discriminatory reasons for any adverse actions Allen identifies that are not time-barred.  Allen cannot show pretext;

(3)    On the Second, Third and Sixth Causes of Action (<u>Trbovich</u>), and the First, Second, Third and Fifth Causes of Action (<u>Allen</u>) alleging retaliation: (a) Trbovich cannot establish a prima facie case; (b) the County had a legitimate, non-retaliatory reason for terminating Trbovich, she cannot establish pretext and she is collaterally estopped from arguing that her termination was unlawful; (c) Santos cannot prevail on her unpled "retaliatory prosecution" claim, and she has no evidence of an adverse employment action; and, (d) the County had legitimate, non-retaliatory reasons for any adverse employment actions Allen identifies that are not time-barred.  Allen cannot show pretext;

(4)    On the First, Second, Third and Sixth Causes of Action (<u>Trbovich</u>) and the First, Second, Third and Fifth Causes of Action (<u>Allen</u>) alleging "wrongful termination," individual defendants are not liable for wrongful termination, wrongful termination in violation of public policy cannot be pled against the County, the arbitrator found the County had just cause to terminate Trbovich and she is collaterally estopped from claiming the

---

[1] The Sheriff's Office Custody Bureau oversees the County's jail system and is responsible for the care, custody and control of the inmates.  The Department of Correction is a County Department under the management of the Chief of Correction.

1

termination was unlawful;

(5)    On the Fourth Cause of Action (<u>Trbovich</u>) for slander, plaintiffs fail to state a claim, entitling Ulrich to judgment on the pleadings.[2]  In the alternative, summary judgment is proper as plaintiffs have no admissible evidence to establish their time-barred claim;

(6)    On the Fourth Cause of Action (<u>Allen</u>) and Fifth Cause of Action (<u>Trbovich</u>) for violation of the California Constitution, plaintiffs' affirmative action claim fails as a matter of law;

(7)    On the Sixth Cause of Action (<u>Allen</u>) and Seventh Cause of Action (<u>Trbovich</u>) for intentional infliction of emotional distress, plaintiffs' claim fails as to Ulrich and Sheriff Smith because it is time-barred, they are immune from liability, and plaintiffs cannot prove that their conduct was extreme and outrageous.  Further, Defendants are not liable for punitive damages;

(8)    On the Seventh Cause of Action (<u>Allen</u>) and Eighth Cause of Action (<u>Trbovich</u>) for negligent failure to train, even if plaintiffs could establish that the subject employment decisions rise to the level of a constitutional deprivation, they fail to identify a training policy that caused a constitutional violation; and even if plaintiffs identify such a policy, there is no evidence that Defendants were deliberately indifferent to their constitutional rights; and,

(9)    On the Eighth Cause of Action (<u>Allen</u>), plaintiffs cannot establish a prima facie case of retaliation in violation of the First Amendment.

Many of plaintiffs' claims are time-barred; many of Allen's claims are barred by <u>res judicata</u>.

## II.

## FACTUAL BACKGROUND

**A.    TRBOVICH**

1.    <u>Trbovich enters the correctional academy.</u>

Trbovich entered the County's correctional academy in September 1995.  (Declaration of Karl A. Sandoval ("Sandoval Dec."), Exhibit A, Arbitration Testimony of Jona Trbovich ("T. Arb.") at 581:5-9; Sandoval Dec., Exhibit E, Deposition of Jona Trbovich ("T. Dep.") at 72:23-73:3.)  Upon graduating, Trbovich became a correctional officer at the Main Jail, then moved to the Elmwood Jail

---

[2] With the exception of the Fourth Cause of Action in the <u>Trbovich</u> Complaint, plaintiffs plead every cause of action in both Complaints against all Defendants.

1   in January 2003.  (T. Dep. at 73:4-14.)  She asked to return to the Main Jail in January 2006, where

2   she remained until her release by the County.  (T. Dep. at 73:15-25; 77:12-19.)  As a correctional

3   officer, she was responsible for the care and custody of inmates.  (T. Dep. at 74:9-16.)

4         Trbovich alleges that Morin coerced her into having sexual relations with him three times she

5   recalls, "maybe four."[3]  (T. Dep. at 158:18-159:4; 164:8-11.)  The first of these encounters was

6   between 1995 and 2003, and the last encounter was in 2006 – <u>eight</u> years before she filed her

7   Complaints.  (T. Dep. at 161:5-22; 162:2-10; 189:25-190:4.)  She never reported these encounters.

8   (T. Dep. at 170:14-22; 173:16-23; 189:7-20.)  Trbovich also alleges that Morin also exposed himself

9   to her, but the last time was in 2009 – <u>five</u> years before her Complaints.  (T. Dep. at 344:16-345:3.)

10         2.   <u>Trbovich took offense to Ulrich's management style but she did not complain of</u>

11   <u>sexual harassment until September 2012.  Trbovich admits starting a sexual</u>
<u>relationship with her former inmate, V. T., the day he was released from custody,</u>

12   <u>leading to her paid administrative leave and termination.</u>

13         Sgt. Ulrich became Trbovich's supervisor in January 2012.  (T. Arb. at 581:5-9.)  She says

14   that she started having problems with Ulrich almost immediately.  (T. Arb. at 581:10-13.)  Trbovich

15   took offense to Ulrich's management style; e.g., Ulrich's direction in February 2012 that she not

16   work out in a medical room where she had previously worked out, his request that she not bring food

17   trays up to her floor, and Ulrich's comments regarding her role in a September 2011 inmate fight

18   (before he was her supervisor) that took place after her shift concluded.  (T. Arb. at 518:24-519:17;

19   575:23-577:23; T. Dep. at 407:12-23.)  Trbovich says she complained to Sgt. Eric Fields "every

20   day" from January 2012 to July 2012 about Ulrich, but she never complained to him that Ulrich was

21   sexually harassing her.  (T. Arb. at 549:2-14.)  She did not go into great detail when she spoke with

22   Fields.  (T. Arb. at 599:3-11.)[4]  Trbovich admitted Ulrich's "harassment" was not sexual in nature:

23

24   ───────────────────

[3] Trbovich never alleged these encounters in her Complaints or her discovery responses.

25

26   [4] Trbovich says she also complained to Fields about Sgt. Porria's behavior in 2011 and 2012, but her

27   knowledge is based on hearsay.  She admits Porria never made any offensive comments to her, never

28   touched her, and never made sexual jokes in her presence.  (T. Dep. at 355:10-358:12; 359:5-360:8.)

| | | |
|---|---|---|
| 1 | Q | Okay.  What happened that made you feel that way? |
| 2 | A | He -- he seemed to be obsessed with me.   Following me around.   Coming into my unit excessively.   Following me around at my break times.  Asking other officers, Which way did Turbo go?  Did she go out this door?  Did she go out this stairwell?  Did Turbo go that way?  Just keeping tabs on me and relentlessly pursuing me. |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | Q | You don't mean pursuing like he was interested in you? |
| 7 | A | No, I don't mean that he was interested in me. |

(T. Arb. at 581:14-25.)

On July 20, 2012, Trbovich began a relationship with V. T., whom she had supervised while he was in custody.  (T. Arb. at 521:9-17; 548:23-549:1; T. Dep at 459:4-18; 490:3-5.)  V. T. told Trbovich that he had information on "the investigation that Ulrich was doing on [her]."  (T. Arb. at 590:13-17; 591:3-7.)  V. T. revealed that "they thought [she] was bringing in drugs into the facility and that [Ulrich] thought [she] was having a relationship with [him] while he was in custody."  (T. Arb. at 621:14-22.)  Trbovich began her relationship with V. T. the day he was released from custody – she picked him up, brought him to her house and, less than a week later, began having sex with him.  (T. Arb. at 623:13-624:9; T. Dep. at 464:12-21; 466:4-24; 469:5-21; 470:14-20; 474:8-17.)

Contrary to policy, she never reported her contact with V. T.  (T. Arb. at 547:16-22; 553:13-17; Sandoval Dec., Exhibit B, Arbitration Testimony of Timothy Davis ("D. Arb.") at 369:19-370:7; 383:11-20; 386:7-16.)  She told no one about her sexual relationship with him until after V. T.'s wife contacted Internal Affairs (IA) in August 2012, and the Department investigated.[5]  (T. Arb. at 601:14-21; 633:1-5; T. Dep. at 477:8-14; Sandoval Dec., Exhibit C, Arbitration Testimony of Dennis

---

[5] Well before V.T.'s wife called Internal Affairs, the County had investigated rumors of an improper relationship between V.T. and Trbovich.  (Sandoval Dec., Exh. W, Arbitration Testimony of Douglas Ulrich at 21:5-19; 22:2-23:1; 30:25-31:19; 34:24-35:10; 38:7-16; 40:3-5; 42:22-43:16; 44:1-2; 53:19-54:9; 55:14-56:10.)

1    Owens ("O. Arb.") at 208:17-20; 227:16-229:19; Sandoval Dec., Exhibit D, Arbitration Testimony

2    of John Hirokawa ("H. Arb.") at 894:17-896:3; D. Arb. at 441:14-442:12.)  A formal IA

3    investigation was opened on September 19, 2012.  (H. Arb. at 896:4-7; 897:3-8.)  Trbovich ended

4    the relationship in late August or early September 2012 after she learned that V. T. was still married

5    and she realized she made a mistake.  (T. Dep. at 488:14-489:5; 489:18-21.)

6          In September Trbovich told Lt. Jillo that Ulrich was "harassing" her and asked to be

7    reassigned.  (T. Arb. at 520:19-521:21.)  Trbovich had "pulled" the number in July 2012 to make a

8    formal written complaint regarding Ulrich's purported harassment, but did not file it until September

9    4, 2012.  (T. Arb. at 588:18-589:20; 630:12-631:10; T. Dep. at 443:2-12; 444:25-445:5.)  A few days

10    after giving Jillo the complaint in early September, she again met with Jillo and "changed" her

11    position to now claim Ulrich sexually harassed her.  (T. Dep. at 445:6-23; 447:9-18.)

12          3.     <u>Trbovich admits that Ulrich did not sexually harass her.</u>

13          Despite her complaints about Ulrich's investigation, Trbovich never felt he was sexually

14    harassing her.  She admits Ulrich never told her he wanted to sleep with her, never asked her out,

15    never asked her for sexual favors, never pressured her to sleep with him, never touched her in an

16    unwanted manner, never made any sexual gestures towards her, never made offensive jokes of a

17    sexual nature, never displayed any sexually suggestive materials or objects, never made any sexual

18    advances[6] and never made any sexual jokes or comments about a person's body or sexual prowess.

19    (T. Dep. at 451:5-17; 455:2-23; 456:21-457:6.)

20          The only "sexual harassment" Trbovich can muster: (1) she once walked into a room when

21    Ulrich was telling a story about how his towel fell off in a football locker room; (2) she felt Ulrich, a

22    large man, wore tight pants; and, (3) Ulrich once startled her when he unexpectedly rounded a corner

23    and entered the jail.  (T. Dep. at 331:6-22; 426:8-25; 427:24-429:7; 452:2-453:1.)

24

25

26    [6] Trbovich's admission, and her arbitration testimony (T. Arb. at 581:14-25), flatly contradict her

27    claim that Ulrich harassed her because she "wouldn't give in to his sexual advances towards [her]."

28    (T. Dep. at 329:4-6.)  Her new, self-serving and inconsistent testimony should be disregarded.

1           4.      **Trbovich is investigated and placed on paid administrative leave.**

2           Based on the information about her and V. T., Trbovich was walked off the job on September

3 24, 2012 and put on paid administrative leave.  (T. Dep. at 97:18-23; T. Arb. at 603:25-604:4.)

4           5.      **Trbovich's DFEH Charge alleges discrimination beginning on January 9, 2012.**

5           On October 1, 2012, Trbovich filed with the Department of Fair Employment and Housing

6 (DFEH) a Charge of Discrimination alleging discrimination based on race and "sex-gender," and

7 retaliation – but not mentioning sexual harassment, Morin, or conduct before 2012.  The "Date of

8 Alleged Violation" is identified as "Earliest Jan [sic] 09, 2012."  (Declaration of Mark Paschal

9 ("Paschal Dec."), Exh. A.)  On September 23, 2013, the DFEH issued a right-to-sue notice.  (Id.,

10 Exh. B.)

11           6.      **Trbovich's second DFEH charge was expressly limited to claims against Ulrich**

12                             **beginning on January 9, 2012.**

13           On October 25, 2012, Trbovich filed a second DFEH Charge alleging discrimination based

14 on sex and race, and retaliation.  (Paschal Dec., Exh. C.)  According to the Charge, Ulrich began

15 "following" her after he became her supervisor.  (Id.)  She again confirmed the "earliest" date of

16 discrimination was <u>January 9, 2012</u> – and again she made no reference to Morin or conduct before

17 2012.  (Id.)  On October 30, 2012, the DFEH issued Trbovich a right-to-sue notice.  (Id., Exh. D.)

18           7.      **An arbitrator upheld Trbovich's termination, finding that the County had just cause to**

19                             **terminate her.  Trbovich did not challenge the arbitrator's award, which was**
                            **confirmed by the Santa Clara County Superior Court.**

20           John Hirokawa – the Undersheriff, Chief of the Department of Correction and the

21 administrative hearing officer in Trbovich's disciplinary proceeding – reviewed the IA investigation

22 and concluded that Trbovich's actions relating to V. T. violated Department policies and County

23 Merit System Rules.  (H. Arb. at 879:20-889:4.)  Trbovich was terminated in approximately July

24 2013.  (T. Dep. at 49:6-8.)  She appealed her termination to an arbitrator, as was her right.

25           On March 17, 2014, the arbitrator issued an award finding that the County had just cause to

26 terminate Trbovich's employment.  (Request for Judicial Notice (RJN), Exh. A.)  Trbovich did not

27

28

1    move to correct or vacate the award.[7]   The County petitioned to have the arbitration award

2    confirmed in Santa Clara County Superior Court.  (Id.)  On January 7, 2016, the Court issued an

3    order that the award "finding that the County had just cause to terminate Jona Trbovich's

4    employment is confirmed and that judgment be entered in conformity therewith."  (Id.)

5         8.    DFEH dismissed Trbovich's third charge, which was limited to Ulrich claims.

6         In a letter to the EEOC dated July 10, 2014, Trbovich said she was filing a new charge based

7    on her "wrongful termination due to gender, race and retaliation" and "based on sexual harassment

8    that continued from Jan. 6, 2012 through 07-03-13."  (Sandoval Dec., Exh. I.)  Trbovich also

9    requested a right-to-sue letter that same day.  (Id., Exh. J.)  Trbovich confirmed her termination was

10   appealed to an arbitrator, who issued his decision on March 17, 2014.  (Id., Exh. I.)  According to

11   her Charge – for race and sex discrimination, and retaliation – Trbovich filed a charge of sexual

12   harassment, which she claimed continued until she was terminated and she alleged she was

13   discriminated against until the arbitrator upheld her termination.  (Id., Exh. K.)

14        On November 28, 2014, the date of the EEOC's Notice of Charge of Discrimination, the

15   DFEH issued a right-to-sue letter.  (Id., Exh. L.)  The EEOC closed its file on December 1, 2014

16   because Trbovich did not sign the Charge, issuing her a Dismissal and right-to-sue.  (Id., Exh. M.)

17   **B.    SANTOS**

18        1.    Santos's DFEH charge.

19        Santos filed a DFEH Charge of Discrimination on August 8, 2014.  (Sandoval Dec., Exh. N.)

20   On August 21, 2014, the DFEH issued a right-to-sue letter.  (Id., Exh. O.)  On September 18, 2014

21   (after she filed her Complaints here), the EEOC issued her a right-to-sue letter.  (Id., Exh. P.)

22        2.    Santos's testimony.

23        Except for harassment by Morin and Ulrich, Santos admits that any alleged harassment

24   occurred more than one year before she filed her DFEH Charge: (1) Lt. Tiano in 1996, Sandoval

25   _____

26   [7] A petition to vacate or correct an award must be filed and served no later than 100 days after the

27   award was served on the petitioner.  Cal. Code Civ Proc. § 1288.

28

1   Dec., Exhibit G, Deposition of Shonda Santos ("S. Dep.") at 40:5-19; (2) Sgt. Arrington from 1994

2   to 1996, id. at 49:15-50:17; (3) Lt. Gottlieb "in the early '90s," id. at 54:14-19; 55:1-8; (4) Officer

3   Wilkins "between 2000 and 2005," id. at 101:17-22; (5) Officer Snell "in the '90s," id. at 63:3-9;

4   64:12-15; 65:6-11; (6) Officer Parsons "in the early 1990s," id. at 86:4-19;  89:3-7; (7) unknown

5   officers talking about a "cute Mexican girl" between 2007 and 2009, id. at 70:7-13; and, (8)

6   unknown officers betting on having sex with Santos in either 2007 or 2008, id. at 70:14-19.

7         3.     Santos was charged and convicted of perjury and grand theft.  She resigned.

8         The Honorable Joanne McCracken issued a warrant for Santos's arrest on October. 10, 2014

9   on charges of felony perjury and felony grand theft.  (RJN, Exh. B.)  Based on pending disciplinary

10  action by the Department arising out of her alleged criminal conduct, Santos was placed on paid

11  administrative leave effective October 16, 2014.  (Declaration of Michael Doty ("Doty Dec."), Exh.

12  A.)

13        On May 21, 2015, the People of the State of California filed a seven-count Information

14  charging Santos with violating Cal. Penal Code §§ 118, 134 and 484/487(a).  (RJN, Exh. C.)  On

15  March 10, 2016, the jury found Santos guilty of felony perjury and felony grand theft.  (RJN, Exhs.

16  D-F.)  On April 22, 2016, Santos resigned from the Sheriff's Office for "personal reasons."  (Doty

17  Dec., Exh. B.)  On April 25, 2016, the court sentenced Santos to a 3-year, 8-month term of

18  imprisonment and ordered her to pay restitution of $12,775.  (RJN, Exhs. E-F.)

19  **C.    ALLEN**

20        1.     Allen previously sued, unsuccessfully, on many of these same claims.

21        Allen previously filed suit against the County, Sheriff Smith, and retired Undersheriff Steve

22  Cushing on November 1, 2001.  (Allen v. County of Santa Clara, Case No. 01-CV-21030, RJN, Exh.

23  G.)  This court summarily dismissed the case pursuant to orders entered on December 10, 2002 (ECF

24  No. 92, RJN, Exh. H.) and February 7, 2003 (ECF No. 141, RJN, Exh. I.)

25        Then and now, Allen alleges a 1998 incident when African Americans were compared to O.J.

26  Simpson.  (Compare Allen Compl. ¶ 25 with 2001 Compl., ¶ 14(a).)  In 1998, a Sergeant allegedly

27  hung a Confederate flag in the work place.  (Compare Allen Compl. ¶ 2 with 2001 Compl., ¶ 14(b).)

28  Allen asserts discriminatory background checks (Allen Compl. ¶ 53), but this court adjudicated that

8

1    issue against him regarding his efforts to become a Sheriff's deputy in 2000 (RJN, Exh. H, pp. 3:12-

2    4:17.)  This court also adjudicated Allen's disparate impact claim (RJN, Exh. H, pp. 4:18-5:28.)

3            In the second summary judgment order, this court adjudicated Allen's application for

4    promotion in 1997.  Allen's "arrest for an alleged kidnaping some years before was a major reason

5    why he had failed the background investigation."  (RJN, Exh. I, p. 3:25-26.)  This court also

6    accepted the County's other reasons for not promoting Allen, "including failed polygraph

7    examinations in 1991 and 1994, omissions and inconsistencies in prior applications, and several

8    work related, domestic, and other incidents in Allen's past that raised questions about Allen's

9    integrity."  (Id. at p. 4:10-12.)  This court also revisited Allen's 2000 application (id. at 4:14-28) and

10   his termination as a reserve deputy sheriff.  (Id. at 5:2-8.)

11           2.      Most of Allen's claims, if not already litigated, are time-barred.

12           During deposition, the County questioned Allen regarding any possible adverse employment

13   action.  Allen testified that he never experienced a pay reduction.  He claimed he was due some pay,

14   but admitted the loss was part of a workers compensation claim.  (Sandoval Dec., Exhibit H,

15   Deposition of Sean Allen ("A. Dep.") at 12:2-4; 12:22-13:5; 13:24-14:3.)

16           Allen claimed that he was given a dangerous assignment in 2012 because he "made several

17   complaints of harassment by a supervisor," but he could not recall how long the assignment lasted.

18   Allen asserted that he was removed from a training position in 2011.  Allen conceded that he did not

19   file a claim with the EEOC or DFEH regarding the reassignments in 2012 or 2011.  (A. Dep. at 17:4-

20   13; 20:5-7; 21:20-24.)

21           Allen also claims reassignment to "a highly volatile dorm" in 2007, but he did not complain

22   or file a complaint.  Allen testified that he "was given assignments that were, again, susceptible to

23   more violent encounters" from 2006 to 2003 but he did not recall filing a complaint or claim.  Allen

24   did not recall previous reassignments.  He then conceded that he had testified regarding all incidents

25   of reassignment to a less favorable position.  Allen could not recall being denied transfer to a more

26   favorable position.  (A. Dep. at 21:25-22:3; 25:5-9; 26:6-9; 26:12-15; 26:16-18; 27:3-6; 28:8-13.)

27           Similarly, Allen was asked, "In 2014, do you recall hearing a racial slur that would be

28   offensive to African-Americans?"  Allen said, "I do not recall."  (A. Dep. at 88:5-7.)  Allen gave the

9

1   same answer to the question for the years 2006 through 2013.  (Id. at 88:8-89:6.)  Allen testified that

2   sometime between 2003 and 2006, Sgt. Nixon entered a building staffed with African American

3   officers and said, "Damn it's dark in here."  (Id. at 89:9-15.)  Allen complained; Sgt. Nixon

4   apologized. (Id. at 89:24-90:4.)  Other than the comment by Sgt. Nixon, Allen did not hear any racial

5   slurs from 2003 to 2005 offensive to African Americans.  (Id. at 90:15-25; 91:4-11; 91:20-25.)

6          3.    Allen's adminstrative charge.

7          Allen filed an administrative charge with the EEOC.  (Sandoval Dec., Exh. Q.)  That charge

8   is unsigned, but the EEOC issued a Notice of Charge of Discrimination on July 8, 2014.  (Paschal

9   Dec., Exh. F.)  On November 4, 2014, the EEOC issued Allen a right-to-sue letter.  (Id., Exh. E.)  By

10  then, plaintiffs had already filed their Complaints in this action.

11                                        **III.**

12                                      **ARGUMENT**

13  **A.    SUMMARY JUDGMENT STANDARD**

14         A court should grant summary judgment when there is no genuine dispute as to any material

15  fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes

16  v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment "is to isolate and dispose of

17  factually unsupported claims or defenses."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

18  **B.    BEFORE FILING A FEHA COMPLAINT, PLAINTIFFS MUST EXHAUST THEIR**
       **ADMINISTRATIVE REMEDIES BY FILING A DFEH CLAIM WITHIN ONE YEAR**
19     **OF ALLEGED CONDUCT.  ALL FEHA ACTIONS BASED ON EVENTS THAT**
       **OCCURRED MORE THAN ONE YEAR BEFORE PLAINTIFFS' DFEH CLAIMS**
20     **ARE BARRED.  EVEN IF THEIR DFEH CLAIMS ARE OTHERWISE TIMELY,**
       **PLAINTIFFS HAVE WAIVED ALL COMPLAINTS NOT IN THE DFEH CLAIM**

21         1.    Plaintiffs must exhaust their administrative remedies by timely filing DFEH charges
22              before filing a suit alleging FEHA claims.

23         The California Government Code requires employees who make claims under FEHA to first

24  file charges with Department of Fair Employment & Housing (DFEH) within one year of the alleged

25  unlawful conduct.  Cal Gov't Code § 12960; Rojo v. Kliger, 52 Cal. 3d 65, 83 (1990).  After the

26  DEFH issues a right-to-sue notice, employees have one year to file a lawsuit.  Cal. Gov't Code §

27  12965.  Similarly, to establish federal subject matter jurisdiction, plaintiffs must exhaust their EEOC

28  administrative remedies before filing their Title VII claims in federal court.  EEOC v. Farmer Bros.

                                          10

1  Co., 31 F.3d 891, 899 (9th Cir.1994).  And allegations in a civil complaint outside the scope of the

2  administrative charge are barred for failure to exhaust.  Rodriguez v. Airborne Express, 265 F.3d

3  890, 897 (9th Cir. 2001); see also Nishimoto v. Federman-Bachrach & Assoc., 903 F.2d 709, 716

4  (9th Cir. 1990) (no jurisdiction over FEHA claim based on failure to exhaust); Blum v. Cnty. of

5  Alameda, Dep't of Soc. Servs., 2003 WL 21518112, *4 (N.D. Cal. June 24, 2003) (same, Title VII).

6         2.    Trbovich's FEHA claims pertaining to events between 1995 and the end of 2011 are
             barred by her failure to timely file DFEH claims regarding such events.

7

8         Because it is undisputed that Trbovich filed her first DFEH Charge on October 1, 2012, any

9  conduct occurring before October 1, 2011 is outside the limitations period as a matter of law.  In

10  fact, Trbovich expressly limited the scope of her DFEH claims to the period beginning January 2012

11  and she adopted this crucial limitation three separate times.

12        Trbovich cannot avoid the statute of limitations by now arguing that Defendants' alleged

13  conduct outside the limitations period was a "continuing violation."  In Cucuzza v. City of Santa

14  Clara, 104 Cal.App.4th 1031 (2002), the court found that plaintiff's FEHA claims were barred by the

15  one-year statute of limitations because the defendant's conduct outside the statutory period was not a

16  continuing violation.  The court noted that an employer's conduct over a period of time would be

17  deemed a continuing violation only if its unlawful actions: (1) were sufficiently similar in kind; (2)

18  occurred with reasonable frequency; and (3) had not acquired a degree of permanence.  Id. at 1041.

19  engaged in a continuing violation that began before then.

20        Plaintiff bears the burden of demonstrating a continuing violation.  Maridon, 2013 WL

21  1786592 at *11 (N.D. Cal. Apr. 25, 2013).  But nothing in her administrative charges relate to

22  alleged (stale, dissimilar) wrongdoing to which she testified, e.g., the Morin encounters.  Instead,

23  Trbovich directed her charges to Ulrich's conduct starting January 2012:

24             After becoming my supervisor in January 2012, Sergeant Ulrich began
               to closely follow my movement while I was on duty.  Sergeant Ulrich
25             also began following me on my breaks and lunch break.  On February
               4, 2012, Sergeant Ulrich told me to stop working out in the medical
26             office during my lunch and breaks.  [In May] 2012, I met with
               Sergeant Ulrich and asked him to stop following me.  In July, 2012, I
27             complained about Sergeant Ulrich's actions.  On September 24, 2012,
               I was placed on Paid administrative leave.
28

(Paschal Dec., Exh. C.)

Nothing about Trbovich's expressly-limited DFEH charges relate to conduct before January 2012. And she did not timely file a DFEH charge for events that allegedly occurred from 1995 through the end of 2011. Thus, Defendants are entitled to summary judgment as to any actual or potential claims by Trbovich that arose before January 2012 or, at the very earliest, October 2011.

     3.    <u>Santos's and Allen's DFEH claims bar them from recovery on claims arising earlier than one year before the date they filed their claims.</u>

Because Santos filed her DFEH Charge on August 18, 2014, any conduct before August 18, 2013 is outside the limitations period. Allen filed his administrative charge on or about July 8, 2014 with the EEOC. As to Allen, any conduct before July 8, 2103 is outside the limitations period.

Santos and Allen cannot establish that Defendants engaged in a continuing violation allowing them to go back decades in time. <u>Maridon</u>, 2013 WL 1786592 at *11. If anything, they have alleged a series of stale, discrete, independently-actionable wrongs upon which they did not sue. Accordingly, Defendants are entitled to summary judgment as to any actual or potential claims by Santos and Allen that arose before August 8, 2013 and July 8, 2013, respectively.

**C.    PLAINTIFFS' WRONGFUL TERMINATION CLAIMS FAIL. ALLEN HAS NOT BEEN TERMINATED, SANTOS RESIGNED AND A WRONGFUL TERMINATION CLAIM DOES NOT STAND AGAINST DEFENDANTS. AS A MATTER OF LAW, THERE WAS JUST CAUSE FOR TRBOVICH'S TERMINATION, WHICH WAS ACTUALLY LITIGATED IN ARBITRATION AND PROVES A LEGITIMATE, NON-DISCRIMINATORY BASIS FOR THE DECISION TO TERMINATE HER.**

     1.    <u>Santos and Allen cannot state a claim for wrongful termination and the individual Defendants cannot be held liable for wrongful termination.</u>

After her conviction, Santos voluntarily resigned from the Sheriff's Office for "personal reasons" (Doty Dec., Exh. B) and Allen is still employed – they were never terminated. And the individual Defendants never employed Trbovich and cannot be held liable for wrongful termination. <u>Miklosy v. Regents of University of California</u>, 44 Cal. 4th 876, 900 (2008) (an action for wrongful discharge can only be asserted against an employer; an "individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy").

2.     <u>Plaintiffs cannot state a wrongful termination claim against the County.</u>

To the extent Trbovich seeks to bring a "wrongful termination" claim against the County, the California Government Claims Act establishes the basic rule that public entities are immune from liability except as provided by statute. Cal. Gov't Code § 815. This limitation is well established. <u>See</u> <u>Guzman v. Cty. of Monterey</u>, 46 Cal. 4th 887, 897 (2009); <u>Miklosy</u>, 44 Cal. 4th at 899.

There is no statutory basis for Trbovich's claim – wrongful termination in violation of public policy is a common law tort and cannot be pled against the County. Cal. Gov't Code § 815; <u>Miklosy</u>, 44 Cal.4th at 898-900 (section 815 bars public policy tort claims against public entities).

3.     <u>The facts surrounding Trbovich's termination were litigated in her arbitration hearing. The arbitration award, which found that the County had just cause to terminate her, was confirmed by the Superior Court. Trbovich is collaterally estopped from relitigating the claim that her termination was wrongful.</u>

On March 17, 2014, the arbitrator issued an award finding that the County had just cause to terminate Trbovich's employment. Trbovich did not move to vacate or correct the award. In a separate proceeding, the County petitioned to have the arbitration award confirmed in Santa Clara County Superior Court. On January 7, 2016, the Superior Court issued an order that the award "finding that the County had just cause to terminate Jona Trbovich's employment is confirmed and that judgment be entered in conformity therewith." (RJN, Exh. A.)

Once confirmed, an arbitration award has all the force and effect of a judgment, and is entitled to recognition by the federal court under the full faith and credit statute, 28 U.S.C.A. §1738. <u>Kremer v. Chemical Constr. Corp.</u>, 456 U.S. 461, 466 (1982). Applying rules of collateral estoppel, Trbovich cannot now claim her termination was unjust. Issue preclusion "bars relitigation of issues actually adjudicated and essential to the judgment in earlier litigation between the same parties." <u>Garrett v. City and County of San Francisco</u>, 818 F.2d 1515, 1520 (9th Cir.1987); <u>Kremer</u>, 456 U.S. at 466 n.6. Whether "just cause" existed for Trbovich's termination was fully adjudicated in the arbitration and essential to the arbitration award, and she raised as a defense to the termination her claim that Ulrich harassed her. Indeed, in her July 10, 2014 letter to the EEOC, Trbovich said she was filing administrative charges based on "wrongful termination" and "sexual harassment that continued from January 6, 2012 through July 3, 2013" and conceded that "<u>[a]ll of these issues were</u>

13

1  presented to the arbitrator for a decision with respect to the termination and my defense that I was

2  sexually harassed for dating African Americans." (Sandoval Dec., Exh. I (emphasis added).)

3         Trbovich is free to pursue statutory FEHA and Title VII claims for race discrimination,

4  sexual harassment and retaliation, but she cannot claim there was no lawful basis for her termination.

5  **D.   RES JUDICATA AND COLLATERAL ESTOPPEL BAR MANY ALLEN CLAIMS**

6         Allen cannot assert claims that predate his 2001 lawsuit against the County.  Res judicata,

7  also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised

8  or could have been raised in the prior action.  Western Radio Servs. Co. v. Glickman, 123 F.3d 1189,

9  1192 (9th Cir. 1997).  Thus, whether expressly raised or not in Allen's prior lawsuit, any claims in

10  existence before the November 1, 2001 are barred under the doctrine of res judicata.

11         Collateral estoppel, on the other hand, bars Allen's attempt to rehash many allegations and

12  supporting evidence from his prior case.  Collateral estoppel – issue preclusion – prevents

13  relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for

14  litigation, in a prior proceeding.  Shaw v. Hahn, 56 F.3d 1128, 1131 (9th Cir. 1995).

15         Allen recycles here claims and allegations that were previously litigated, or could have been

16  litigated, in his 2001 action.  Res judicata and collateral estoppel preclude a second bite at the apple.

17  **E.   PLAINTIFFS' RETALIATION AND DISCRIMINATION CLAIMS FAIL**

18         1.   The individual Defendants cannot be liable for retaliation or discrimination.

19         The California Supreme Court has expressly held that individuals cannot be held liable for

20  retaliation as a matter of law.  Jones v. Lodge at Torrey Pines Partnership, 42 Cal. 4th 1158, 1173

21  (2008).  Thus, plaintiffs' retaliation claims against the individual Defendants must be dismissed.

22         Individuals also cannot be held liable for discrimination.  FEHA prohibits an employer from

23  discriminating in the work place.  Cal. Gov't Code § 12940(a).  An "employer" includes "any person

24  regularly employing five or more persons, or any person acting as an agent of an employer."  Cal.

25  Gov't Code § 12926(d).  See also Reno v. Baird, 18 Cal. 4th 640, 663 (1997) ("individuals who do

26  not . . .  qualify as employers may not be sued . . .  for alleged discriminatory acts.")

27

28

2.    The three-stage burden shifting test in discrimination and retaliation claims.

The California Supreme Court has adopted a three-stage burden-shifting test for discrimination and retaliation claims.  Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 354 (2000); Jones v. Dep't of Corr. & Rehab., 152 Cal.App.4th 1367, 1380 (2007).  Plaintiff bears the initial burden to establish a prima facie case.  Id.  If the plaintiff meets her burden, the burden of production, but not persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action.  Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010); Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042.

If defendant meets this burden, plaintiff must raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful conduct.  Hawn, 615 F.3d at 1155.  Thus, the presumption of retaliation "drops out of the picture," and the burden shifts to the employee to prove intentional retaliation.  Yanowitz, 36 Cal. 4th at 1042.

3.    Trbovich cannot establish a prima facie case of retaliation or discrimination.

Government Code Section 12940(h) makes it an unlawful employment practice for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Gov't Code § 12940.  To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two.  Morgan v. Regents of Univ. of Cal., 88 Cal.App.4th 52, 69-70 (2000).

To be adverse action sufficient to state a claim for retaliation, the employer's actions must affect terms, privileges, conditions, or duration of employment.  Helgeson v. American International Group, Inc., 44 F.Supp.2d 1091, 1098-99 (S.D. Cal. 1999).  Both complaints allege that Trbovich's termination was an adverse employment action.  (Trbovich Compl. ¶ 62; Allen Compl. ¶ 72.)

To establish a causal link between protected activities and a termination, a plaintiff must submit evidence sufficient to connect the protected activity to the adverse action.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 919 (9th Cir. 1996.)  Such evidence might consist of temporal proximity between protected activity and the allegedly retaliatory employment decision.  See Clark

15

1  County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (action 20 months after protected activity

2  "suggests, by itself, no causality at all").  Here, Trbovich says she started constantly complaining to

3  Fields about Ulrich beginning in January 2012, but she was not placed on paid administrative leave[8]

4  until late September 2012, after V. T.'s wife called IA in August 2012 and the Department began to

5  investigate – and her termination did not occur until July 2013.

6       Even if Trbovich produced evidence of a temporal connection, the Court must still look to

7  the surrounding circumstances to find the necessary causal connection.  Cozalter v. City of Salem,

8  320 F.3d 968, 978 (9th Cir. 2002).  In this case, the surrounding circumstances fail to establish any

9  connection between Trbovich's purportedly daily complaints and her paid administrative leave and

10  ultimate termination.  But by contrast, she was placed on paid administrative leave shortly after IA

11  received the call from V. T.'s wife and the resulting IA investigation began.

12       Trbovich also cannot establish a prima facie case of discrimination.  The California Supreme

13  Court has adopted the three-stage burden-shifting test established by the United States Supreme

14  Court for discrimination claims based on disparate treatment.  Guz, 24 Cal. 4th at 354.  Plaintiff has

15  the burden to establish a prima facie case of discrimination.  Id.  She must prove that: (1) she was a

16  member of a protected class; (2) she was qualified for the position sought or was performing

17  competently in the position held; (3) she suffered an adverse employment action, such as termination

18  or demotion; and (4) some other circumstance suggests discriminatory motive.  Id.

19       As with retaliation, once a prima facie case is established, the burden shifts to the employer

20  to provide a legitimate, nondiscriminatory explanation for its acts.  Guz, 24 Cal. 4th at 355-56.  If the

21  employer sustains this burden, the presumption of discrimination is rebutted.  Id. at 356.  To prevail,

22  a plaintiff must produce evidence of a specific, substantial nature that the employer's stated reasons

23  are: (1) false, that is, a pretext or cover-up for what in truth was a discriminatory purpose; and, (2)

24  that discrimination was the real reason.  Nidds, 113 F.3d at 918; Guz, 24 Cal.4th at 354.

25       There is simply no evidence that Trbovich's sex or race was the reason she was placed on

26

27

28

[8] Paid administrative leave was not an adverse employment action.

16

1    paid administrative leave – and ultimately terminated – following the revelation of her relationship

2    with V. T.  Thus, Trbovich cannot establish a prima facie case of discrimination.

3           4.       The County had legitimate, non-retaliatory reasons for terminating Trbovich.

4           Even if Trbovich has met her prima facie burden, the undisputed evidence demonstrates that

5    the County had legitimate, non-retaliatory, non-discriminatory reasons for terminating her.  Indeed,

6    the County's basis for terminating Trbovich was the central issue at her arbitration, and the arbitrator

7    concluded that the County had just cause to terminate her.  Its stated reasons for the termination were

8    actually adjudicated and essential to the arbitration between these same parties.  And as Trbovich

9    stated in her letter to the EEOC alleging "wrongful termination" and "sexual harassment that

10   continued from January 6, 2012 through July 3, 2013," "[a]ll of these issues were presented to the

11   arbitrator for a decision with respect to the termination and my defense that I was sexually harassed

12   for dating African Americans."  (Sandoval Dec., Exh. I.)

13          The January 7, 2016 order confirming the arbitration award and "finding that the County had

14   just cause to terminate Jona Trbovich's employment" is binding here, and establishes that the

15   County had a lawful reason for terminating Trbovich.  She is collaterally estopped from arguing to

16   the contrary and relitigating the legitimacy of the County's reasons.  See also H. Arb. at 879:20-

17   889:4 (discussing legitimate, non-retaliatory, non-discriminatory reasons for termination).

18          5.       The County had legitimate, non-retaliatory, non-discriminatory reasons for any
                     adverse employment actions involving Allen.
19

20          Allen testified to various purported adverse employment actions, but as shown above, most

21   took place well before mid-2013 and are thus time-barred or are not adverse employment actions

22   because they did not affect the terms, privileges, conditions, or duration of his employment.  See

23   Helgeson, 44 F.Supp.2d at 1098-99; Thompson v. City of Monrovia, 186 Cal.App.4th 860, 875-76

24   (2010); Thomas v. Dept. of Corrections, 77 Cal.App.4th 507, 510-12 (2000).

25          As to Allen's 2014 attempt to promote to correctional sergeant, he admits that the County

26   accepted his application and that he was notified that he did not score high enough on the oral exam.

27   (A. Dep. at 28:14-22; 29:3-5.)  Nonetheless, he surmises that Sheriff Smith or her "underlings"

28   somehow influenced the panel who heard his oral exam.  (A. Dep. at 32:7-12; 32:16-22.)  He

                                                        17

1    otherwise offers no evidence to support his retaliation claim.  (A. Dep. at 36:1-3.)

2         Assuming for purposes of this motion that Allen can make a prima facie case of retaliation,

3    the County had a legitimate and lawful reason why he was not selected.  The County conducted a

4    competitive oral examination of candidates seeking promotion from November 17 to November 24,

5    2014.  To ensure objectivity and fairness, the same panel interviewed each candidate.  Each

6    candidate answered the same three questions during the fifteen minutes allotted for the examination.

7    The panel consisted of Sheriff's Correctional Lieutenant Eric Taylor, Law Enforcement Records

8    Administrator Michelle Covarrubias, and Sheriff's Correctional Lieutenant Christopher Grumbos.

9    (Declaration of Sherae Moresco ("Moresco Dec."), ¶¶ 1-10 & Exh. A.)

10        Allen applied for promotion to correctional sergeant and his examination occurred on

11   November 21, 2014.  Of a possible score of 100 percent, Allen scored 65.  70 is the lowest passing

12   score.  Allen received an identical score from each panel member.  Lt. Taylor, an African American,

13   signed Allen's score sheet for the panel and wrote, "Failed to grasp concepts of questions and

14   provide appropriate responses. Q 1, 2, & 3."  Of the 34 applicants for promotion to correctional

15   sergeant, 14 passed, 18 failed, and 2 did not participate in the examination.  Because Allen failed the

16   examination, he did not pass to the next stage of the promotional process.  (Moresco Dec., ¶¶ 11-18

17   & Exhs. B-C.)

18        While Allen claims that the non-assignment of trainees to him constituted discriminatory

19   action, all decisions regarding assignment and non-assignment of trainees were made in accordance

20   with non-discriminatory and non-retaliatory standards and practices employed by the DOC.

21   (Declaration of Patrick Corso, ¶¶ 1-15.)

22        Also unpersuasive is Allen's objection to the discipline he received following his late 2014,

23   early 2015 skirmish with Osborne, a fellow officer.  Allen does not recall the allegations.  (A. Dep.

24   at 47:15-16; 47:23-48:1.)  He is not sure if he was disciplined because of his race – thereby failing to

25   establish a prima facie case of discrimination – but asserts that he was disciplined in retaliation for

26   his prior lawsuit.  (A. Dep. at 48:13-15; 48:16-19.)  Osborne, Allen speculates, knew of his prior

27   lawsuit and complained about Allen knowing the County would support Osborne.  (A. Dep. at

28   50:12-19.)  But this plainly makes no sense.  Allen's lawsuit concluded ten years before Osborne

18

1    complained about Allen.  Thus, Allen fails to make out a prima facie case of retaliation.

2            Fundamentally, there is no competent evidence that Defendants acted with a race-based, sex-

3    based, retaliatory or otherwise unlawful motive.  Accordingly, all that remains are Allen and

4    Trbovich's unsupported allegations that they were treated differently because of their sex, race, etc.

5    That is not enough to establish overcome the County's stated legitimate reasons for its employment

6    actions.  See Fleming v. AC Square, Inc., No. 5:11-CV-01830 EJD, 2012 WL 1868915, *6 (N.D.

7    Cal. May 22, 2012) (citing Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005)

8    ("conclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion

9    for summary judgment"); Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir.1996) (no

10   "genuine issue" where the only evidence presented is "uncorroborated and self-serving" testimony).

11           6.      Santos resigned and cannot prevail on an unpled claim of retaliatory prosecution – her
                     conviction proves there was probable cause for her to be prosecuted.
12

13           Plaintiffs' counsel has indicated that he intends to pursue a claim for retaliatory prosecution

14   arising out of Santos's arrest, trial and conviction arising out her false statements in a family law

15   proceeding involving her ex-husband.  For several reasons, this claim fails.

16           First, the alleged adverse employment action – her separation from the County – does not

17   support a prima facie case because Santos voluntarily resigned from employment.  Thus, she cannot

18   show a causal link between protected activity and adverse employment action.  See Morgan, 88

19   Cal.App.4th at 69-70.  She is solely responsible for her separation from employment.

20           Second, Santos's arrest and prosecution occurred after the filing of plaintiffs' complaints.

21   Plaintiffs' counsel did not file a supplemental complaint pursuant to Fed. R. Civ. Proc. 15(d).  Thus,

22   any events occurring after the filing date are not part of this lawsuit.

23           Finally, a Santa Clara County jury convicted Santos of perjury and grand theft.  She is now a

24   convicted felon, and any claim of retaliatory prosecution fails as a matter of law:

25                  [U]nder Hartman [v. Moore (2006) 547 U.S. 250], if a plaintiff can
                    prove that the officials secured his arrest or prosecution without
26                  probable cause and were motivated by retaliation against the plaintiff's
                    protected speech, the plaintiff's First Amendment suit can go forward.
27

28   Beck v. City of Upland, 527 F.3d 853, 863-64 (9th Cir. 2008).

                                                    19

1  Santos's conviction conclusively establishes the existence of probable cause.  <u>Bergstralh v.</u>

2  <u>Lowe</u>, 504 F.2d 1276, 1277–1279 (9th Cir. 1974).  Even if Santos attempted to file a supplemental

3  complaint alleging retaliatory prosecution, Defendants would seek judicial notice of the conviction

4  and obtain dismissal of the claim pursuant to Fed. R. Civ. Proc. 12(b)(6).

5  Accordingly, the Court should grant summary judgment in Defendants' favor on any claim

6  for retaliatory prosecution related to Santos's arrest, prosecution, conviction and sentencing.

7  **F.  PLAINTIFFS' SEXUAL AND RACIAL HARASSMENT CLAIMS FAIL**

8  To prevail on their harassment claims, plaintiffs must demonstrate that their workplace was

9  permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the

10  conditions of employment and create an abusive environment.  See <u>Harris v. Forklift Systems, Inc.</u>,

11  510 U.S. 17, 21 (1993).  Juries are instructed to consider circumstances including the nature and

12  severity of the conduct, how often the conduct occurred, the period of time the conduct occurred;

13  and the circumstances under which the conduct occurred.  CACI 2524.  The "severe or pervasive"

14  standard establishes a threshold test for assessing the offensive conduct.  Under that standard, trivial

15  or occasional, sporadic, or isolated incidents are not actionable.  Plaintiffs must show a concerted

16  pattern of harassment of a repeated, routine or a generalized nature.  <u>See</u> <u>Aguilar v. Avis Rent A Car</u>

17  <u>System, Inc.</u>, 21 Cal. 4th 121, 130 (1999).  The conduct must be both objectively and subjectively

18  objectionable.  <u>Harris</u>, 510 U.S. at 21.

19  As to Santos, Defendants are entitled to summary judgment regarding alleged harassment by

20  Lt. Tiano, Sgt. Arrington, Lt. Gottlieb, Officer Wilkins, Officer Snell, and Officer Parsons because

21  her claims against them are time-barred.

22  As to Trbovich, her only timely harassment claims are against Ulrich.  She will likely argue

23  that an employer is strictly liable for acts of sexual harassment by a supervisor, <u>State Dept. of Health</u>

24  <u>Servs. v. Superior Court</u>, 31 Cal. 4th 1026, 1042 (2003), but the undisputed evidence shows that

25  Ulrich did not sexually harass her in the first instance.  Ulrich never told her he wanted to sleep with

26  her, never asked her out, never asked her for sexual favors, never pressured her to sleep with him,

27  never touched her in an unwanted manner, never made any sexual gestures towards her, never made

28  offensive jokes of a sexual nature, never displayed any sexually suggestive items, never made any

20

1  sexual advances and never made any sexual jokes or comments.  (T. Dep. at 451:5-17; 455:2-23;

2  456:21-457:6.)  Indeed, the conduct she attributes to Ulrich does not constitute objectively and

3  subjectively objectionable sexual harassment.  And she can offer no evidence of any racial

4  harassment during the period covered by her administrative charges.

5      Allen also offers no evidence of racial harassment during the period covered by his EEOC

6  charge.  To the extent he cites harassment during this period, he cannot demonstrate that it is based

7  on his race, and it is otherwise so remote, indirect, isolated and sporadic that it is not actionable.

8  **G.      PLAINTIFFS' AFFIRMATIVE ACTION CLAIM FAILS AS A MATTER OF LAW**

9      Plaintiffs allege that Defendants violated Article I, section 31 of the California Constitution.

10  But plaintiffs fail to identify any preferential treatment program at issue here.  Plaintiffs instead

11  dispute the disparate treatment they allegedly received.  Absent an alleged program that aims to

12  provide preferential treatment to one protected group over another, Section 31 does not apply.

13      Voters added Section 31 to the California Constitution in 1996 following their approval of

14  Proposition 209.  Hi-Voltage Wire Works, v. City of San Jose, 24 Cal. 4th 537, 542, 559-60 (2000)

15  (attempting to "effectuate the voters' intention only by interpreting th[e] language [of Section 31] in

16  its historical context.").  Section 31(a) provides: "The state shall not discriminate against, or grant

17  preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or

18  national origin in the operation of public employment, public education, or public contracting."  The

19  California Supreme Court interpreted this language to prohibit preferential treatment.  Hi-Voltage,

20  24 Cal. 4th at 561-62 ("[T]he City's Program is unconstitutional because the outreach option affords

21  preferential treatment to MBE/WBE subcontractors on the basis or race or sex."); Coral Const., Inc.

22  v. City and County of San Francisco, 50 Cal. 4th 315, 327 (2010) ("[S]ection 31 prohibits race-and

23  gender-conscious programs the federal equal protection clause permits but does not require.").

24      The purpose of Proposition 209 – and hence Section 31 – was to prohibit affirmative action

25  or preferential treatment programs that discriminate against non-minority groups as unconstitutional.

26  Section 31 is not a reaffirmation of existing prohibitions against discrimination in the Constitution

27  and federal and state anti-discrimination statutes.  See Hi-Voltage, 24 Cal. 4th at 561 ("[Preferences,

28  for any purpose, are anathema to the very process of democracy.").  Moreover, as demonstrated

21

1    above, plaintiffs cannot show disparate treatment discrimination.

2    **H.    PLAINTIFFS TRBOVICH AND SANTOS DID NOT ADEQUATELY PLEAD AND
3    CANNOT ESTABLISH THEIR FOURTH CAUSE OF ACTION FOR SLANDER**

4            Plaintiffs fail to state a cause of action against Ulrich for slander.  Defamatory matters must

5    be set forth verbatim in the complaint.  <u>Hecimovich v. Encinal School Parent Teacher Organization</u>,

6    203 Cal.App.4th 450, 461 n.1 (2012).  Here, plaintiffs ignore this requirement – their complaint only

7    generally identifies statements attributed to Ulrich regarding plaintiffs' sexual relations with inmates.

8    (Trbovich Compl. ¶¶ 30, 65, 80.)  Because Ulrich's allegedly-slanderous statements are not set forth

9    verbatim, plaintiffs' fourth cause of action should be dismissed for failure to state a claim.

10           In the alternative, Ulrich is entitled to summary judgment because plaintiffs have no

11   admissible evidence supporting their claim that Ulrich falsely told others that plaintiffs slept with

12   inmates.  Plaintiffs' claim turns on what they allegedly heard from inmates who reported Ulrich's

13   purported statements to Trbovich and Santos.  (T. Dep. at 318:21-319:5; 366:8-367:10; 367:25-

14   368:10; 437:3-8; S. Dep at 27:2-8; 27:20-28:7.)  Plaintiffs themselves never heard the statements and

15   cannot testify based on personal knowledge.  Hearsay statements will not defeat summary judgment.

16           Plaintiffs' claim is also untimely.  Trbovich learned of Ulrich's statements at least a month or

17   two before she was placed on administrative leave in September 2012.  (T. Dep. at 319:22-24;

18   366:15-25.)   Santos concurs that it was sometime in 2012, but possibly 2011.  (S. Dep. at 26:19-25.)

19           Plaintiffs' slander claim is thus barred by the Government Claims Act.  Trbovich submitted

20   her tort claim on April 28, 2014 and admits that it is accurate; Santos submitted hers on June 26,

21   2014.  (T. Dep. at 40:6-41:7 & Dep. Exh. 1; Sandoval Dec., Exh. S.)  As to conduct before October

22   28, 2013, the County returned Trbovich's claim without action because it was not filed within six

23   months of the alleged conduct, as required by Cal. Gov't Code §§ 901, 911.2.  (<u>Id</u>., Exh. R.)  For the

24   same reasons, Santos's claim was returned without action as to conduct before December 26, 2013.

25   (<u>Id</u>., Exh. T.)  Plaintiffs' complaint was not filed until August 25, 2014 – years after the alleged

26   slander.  <u>See also</u> Cal. Code Civ. Proc. § 340(c) (one-year statute of limitations).[9]

27   _____

28   [9]  Government Code § 822.2 states that a "public employee acting in the scope of his employment is

1

## I.   PLAINTIFFS CANNOT ESTABLISH A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ULRICH OR SHERIFF SMITH

2

3       Plaintiffs' intentional infliction of emotional distress claim against Ulrich is also time-barred.

4   Trbovich's tort claim was untimely as to conduct before October 28, 2013.  Thus, conduct by Ulrich

5   of which she complains is time-barred because Trbovich was placed on leave in September 2012.

6   There is no conduct – "extreme and outrageous" or otherwise – after that date, and any before then is

7   untimely.[10]  Cal. Gov't Code §§ 901, 911.2.  Similarly, Santos's tort claim was untimely as to

8   conduct before December 26, 2013 and she has no evidence of conduct by Ulrich after that date.

9   Allen alleges no wrongdoing by Ulrich or Morin.

10       To the extent plaintiffs' intentional infliction claim is not time-barred, the Claims Act also

11   establishes the basic rule that public entities are immune from liability except as provided by statute.

12   Cal. Gov't Code § 815(a).  Government Code section 820.2 expressly provides immunity for

13   liability for discretionary acts performed by public officers and employees in the exercise of their

14   discretion.  Decisions to institute disciplinary proceedings are a policy decision involving the

15   exercise of discretion entitling them to immunity under Section 820.2.  Kemmerer v. Cnty. of

16   Fresno, 200 Cal.App.3d 1426, 1437 (1988).  Governmental employees are also immune under

17   Section 821.6 for investigation of workplace misconduct, even if action is taken maliciously or

18   without probable cause.[11]  Paterson v. City of Los Angeles, 174 Cal.App.4th 1393, 1405 (2009); see

19   also Davison ex rel. Sims v. Santa Barbara High Sch. Dist., 48 F.Supp.2d 1225, 1232 (C.D. Cal.

20   1998) (granting summary judgment on intentional infliction of emotional distress because the claim

21   _____

22   not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be

23   negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice."  Conclusory

24   allegations that an employee acted out of malice or corruption are insufficient.  Curcini v. County of

25   Alameda, 164 Cal.App.4th 629, 649 (2008).  There is no evidence Ulrich acted with corruption, etc.

26

27   [10] For the same reason, Trbovich's claim is also untimely as to Morin and his alleged conduct.

28   [11] If the employee is immune, so too is the County.  Cal. Gov't Code § 815.2(b).

23

1  fell well within the immunities boundaries).

2      Ulrich is immune from liability under Section 820.2 for his discretionary conduct while

3  investigating information regarding Trbovich's actions in the jail.  It is in that context Trbovich and

4  Santos complain of Ulrich – but the manner in which he investigated misconduct is not actionable,

5  even if it was done maliciously or without probable cause.  <u>Paterson</u>, 174 Cal.App.4th at 1405.

6      Even if immunity did not apply, plaintiffs' claim against Ulrich fails because they lack

7  evidence of "extreme and outrageous conduct."  <u>Corales v. Bennett</u>, 488 F.Supp.2d 975, 988 (C.D.

8  Cal. 2007), <u>aff'd</u>, 567 F.3d 554 (9th Cir. 2009).  In order to establish a prima facie case of intentional

9  infliction of emotional distress, a plaintiff must demonstrate extreme and outrageous conduct by the

10  defendant with the intention of causing, or reckless disregard of the probability of causing, emotional

11  distress.  <u>Id</u>.  In order to be considered outrageous, the conduct must be so extreme as to exceed all

12  bounds of that usually tolerated in a civilized community.  <u>Id</u>.  Managing personnel is not outrageous

13  conduct beyond the bounds of human decency, but rather conduct essential to the welfare and

14  prosperity of society.  <u>Janken v. GM Hughes Electronics</u>, 46 Cal. App. 4th 55, 80 (1996).

15      Plaintiffs cannot establish their prima facie case because Ulrich's acts as alleged in the

16  complaint are not outrageous and plaintiffs have no admissible evidence of outrageous conduct.

17  Trbovich accuses Ulrich of following her, looking for her, asking others to report her whereabouts to

18  him, displaying "signs of infatuation" with her, giving her dirty looks and calling her name in a

19  "suggestive and demeaning manner."  (<u>Trbovich</u> Compl. ¶¶ 31-32, 35.)  But such conduct, even if

20  proven, is not beyond all bounds of that tolerated in a civilized community.  <u>Corales</u>, 488 F.Supp.2d

21  at 988.  Trbovich tries to impute malice to Ulrich by saying he was sexually interested in her

22  (<u>Trbovich</u> Compl. ¶ 40), but her sworn testimony contradicts this allegation.  (T. Arb. at 581:14-25;

23  T. Dep. at 451:5-17; 455:2-23; 456:21-457:6.)  And there is no admissible evidence that Ulrich made

24  false statements to others about Trbovich and Santos having sex with inmates.  (T. Dep. at 318:21-

25  319:5; 366:8-367:10; 367:25-368:10; S. Dep. at 27:2-8; 27:20-28:7.)  The most "outrageous"

26  conduct Trbovich cites is her belief that Ulrich's pants were too tight.  (T. Dep. at 452:2-453:1.)

27  Such evidence is insufficient to prove intentional infliction of emotional distress.

28      Sheriff Smith is also not liable for intentional infliction of emotional distress.  Allen claims

1    that the Sheriff "wrongfully refused" to accept applications from African American correctional

2    officers applying to become deputy sheriffs and that she threatened to punish Allen "in 2003" for

3    filing his prior lawsuit and "send people after him and get rid of him no matter what it took." (Allen

4    Compl. ¶¶ 22, 43, 50.)  Allen personally attributes to Sheriff Smith that he has been subjected to a

5    dozen IA investigations and received a letter of reprimand in 2011.  (Id. ¶¶ 44-46).  Finally, he

6    claims the Sheriff retaliated against officers who did not agree to an "intrusive" background

7    investigation as a condition of applying to become a sheriff's deputy.  (Id. ¶ 100.)

8         Allen's claim is untimely.  He submitted his tort claim to the County on June 26, 2014; as to

9    conduct occurring before December 26, 2013, the County returned Allen's claim without action

10   because it was not filed within six months of the alleged conduct, as required by Cal. Gov't Code §§

11   901, 911.2.  (Sandoval Dec., Exhs. U-V.)  Thus, he cannot sue for intentional infliction of emotional

12   distress – a common law claim – for his 2011 letter of reprimand, investigations before mid-2013,

13   his old quibble with the background investigation, and the Sheriff's purported statement in 2003.

14        Finally, the Sheriff enjoys immunity under Gov't Code § 820.2 for disciplinary proceedings.

15   Kemmerer, 200 Cal.App.3d at 1437 ("decision whether or not to initiate disciplinary proceedings

16   and what discipline to impose is placed initially on the department head . . . is entirely within his

17   discretion"); see also Gov't. Code § 821.6 (immunity for investigating workplace misconduct.

18   **J.    THERE WAS NO RETALIATION IN VIOLATION OF THE FIRST AMENDMENT**

19        Plaintiffs' eighth cause of action in the Allen complaint seeks to state a claim for retaliation

20   in violation of the First Amendment.  The claim rests on Allen's allegation that Sheriff Smith

21   retaliated against correctional officers who refused to participate in a background investigation

22   required to become a sheriff's deputy.  (Allen Compl. ¶¶ 100-101.)

23        This claim is time-barred.  Allen testified that he applied for a Sheriff's deputy position in

24   1997 or 1998 and approximately 2002.  (A. Dep at 41:15-42:1; 44:7-11.)  Claims regarding those

25   applications and the background check requirement achieved permanence 15 or more years ago and

26   are stale.  Allen cannot try to revive them under the guise of a First Amendment claim, particularly

27   because he also challenged the background investigation in his 2001 action, in which the County

28   obtained summary judgment.  As such, res judicata precludes relitigation of the issue in this case.

25

1    Even if the claim was timely, Allen cannot establish a prima facie case because he has not

2    engaged in speed that involves a matter of public concern.  The Ninth Circuit follows a five-step

3    inquiry to determine whether an employer retaliated against a government employee for engaging in

4    protected speech.  Eng v. Cooley, 552 F. 3d 1062, 1070 (9th Cir. 2009).  To establish a prima facie

5    case, plaintiff must show: (1) plaintiff spoke on a matter of public concern; (2) plaintiff spoke as a

6    private citizen, not as a public employee; and, (3) plaintiff's protected speech was a substantial or

7    motivating factor in the adverse employment action.  Robinson v. York, 566 F.3d 817, 822 (9th Cir.

8    2009).

9    "[T]he First Amendment does not require a public office to be run as a roundtable for

10   employee complaints over internal office affairs."  Connick v. Myers, 461 U.S. 138, 149 (1983).

11   "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an

12   employee upon matters only of personal interest, absent the most unusual circumstances, a federal

13   court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a

14   public agency allegedly in reaction to the employee's behavior."  Id. at 147-148) (explaining that

15   plaintiff's speech was "an attempt to constitutionalize an employee grievance").

16   The crux of Allen's complaint is that he was required to submit to a background investigation

17   to become a Sheriff's deputy but "elect[ed] not to participate" because he deemed it intrusive.

18   (Allen Compl. ¶ 100.)  A choice "not to participate" is not speech, but even if it is, these allegations

19   reflect nothing more than an individual personnel dispute arising out of dissatisfaction with

20   application requirements.  Simple disagreement with an employer's job requirement does not

21   transform the issue into a constitutional one.  Because there is no evidence that Allen's "speech" –

22   made in his capacity as a public employee, not as a private citizen – related to a political, social, or

23   other concern to the community, it did not involve a matter of public concern.

24   Allen must also demonstrate that his speech was a substantial or motivating factor in

25   Defendants' actions.  Huskey v. City of San Jose, 204 F.3d 893, 900 (9th Cir. 2000).  When a

26   plaintiff fails to introduce evidence that his protected speech was a substantial motivating factor in

27   an adverse employment action, defendant is entitled to a summary judgment on a claim for

28   retaliation for exercising his First Amendment rights.  Id.; Nelson v. Pima Community College, 83

26

1  F.3d 1075, 1080 (9th Cir. 1996) (affirming summary judgment where plaintiff submitted evidence

2  that she had engaged in protected speech and was told not to come back to work but did not

3  introduce evidence of a link between the two events); Thomas v. Douglas, 877 F.2d 1428, 1433-34

4  (9th Cir. 1989) (affirming summary judgment because the claimant failed to offer evidence that his

5  protected speech was a substantial motivating factor in refusal of transfer request).  Allen has no

6  evidence that his speech was a "substantial motivating factor" in any retaliatory action against him.

7  **K.     DEFENDANTS ARE NOT LIABLE FOR PUNITIVE DAMAGES**

8          California Civil Code section 3294 authorizes punitive damages against a defendant only if

9  malice, oppression or fraud is established by clear and convincing evidence.  "The mere carelessness

10 or ignorance of the defendant does not justify the imposition of punitive damages. . . . Punitive

11 damages are proper only when the tortious conduct rises to levels of extreme indifference to the

12 plaintiff's rights, a level which decent citizens should not have to tolerate."  See American Airlines,

13 Inc. v. Sheppard, Mullin, Richter & Hampton, 96 Cal.App.4th 1017, 1051 (2002) (internal quotes

14 and citations omitted).  See also Roby v. McKesson Corp., 47 Cal.4th 686, 716 (2009) (holding that

15 managerial malfeasance did not comprise oppression, fraud or malice for punitive damages award).

16         Plaintiffs purport to seek punitive damages against all Defendants.  (Trbovich Compl., Prayer

17 for Relief ¶ 3; Allen Compl., Prayer for Relief ¶ 3.)  But Government Code section 818 plainly bars

18 the imposition of punitive damages against a public entity.  (Cal. Gov't Code § 818.)  And plaintiffs

19 have presented no evidence of tortious conduct that rises to extreme indifference to plaintiffs' rights.

20         Summary judgment is warranted on the punitive damages claim.  See, e.g., Corales, 488

21 F.Supp.2d at 988 (granting summary judgment where there was no evidence of outrageous conduct).

22 **L.     PLAINTIFFS CANNOT ESTABLISH THEIR MONELL CLAIMS**

23         In Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 689 (1978), the

24 Supreme Court held that municipalities and other local governmental bodies are "persons" within the

25 meaning of section 1983.  But a municipality may not be held liable under section 1983 solely

26 because it employs a tortfeasor.  Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S.

27 397, 403 (1997).  A plaintiff seeking to impose liability on a municipality under section 1983 is

28 required to identify a policy or custom that caused the plaintiff's injury.  Monell, 436 U.S. at 694.

27

1    A plaintiff alleging a section 1983 violation cannot merely point to conduct attributable to the

2    municipality.  The plaintiff must demonstrate that, through its deliberate conduct, the municipality

3    was the "moving force" behind the injury alleged.  Bd. of County Com'rs, 520 U.S. at 404.  That is,

4    a plaintiff must show that the municipal action was taken with the requisite degree of culpability and

5    must demonstrate a direct causal link between the action and the deprivation of federal rights.  Id.

6    A constitutional violation may arise from hiring, training, or supervision where the hiring,

7    training or supervision is sufficiently inadequate to constitute deliberate indifference to the rights of

8    persons.  Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989) (quoting City of Canton,

9    Ohio v. Harris, 489 U.S. 378, 388-89 (1989)).  To establish such a claim, a plaintiff must show that:

10   (1) the municipality's hiring, training, or supervision policies were inadequate; (2) the municipality

11   was deliberately indifferent in adopting the hiring, training, or supervision policies; and, (3) the

12   inadequate hiring, training, or supervision policies directly caused plaintiff's constitutional injury.

13   City of Canton, 489 U.S. at 388-89.  Plaintiff must show that the constitutional injury would have

14   been avoided had the municipality properly hired, trained, and supervised its employees.  Id.

15   Here, pursuant to 42 U.S.C. § 1983, plaintiffs allege against all Defendants that "the County

16   and the Sheriff inadequately trained its Sheriffs and Correctional Officers."  (Allen Compl. ¶ 99;

17   Trbovich Compl. ¶ 94).  As an initial matter, plaintiffs fail to establish that they suffered a violation

18   of their constitutional rights.  Even if plaintiffs could establish that the employment decisions at

19   issue rise to the level of a constitutional deprivation, they fail to identify any training policy that

20   caused them to suffer a constitutional violation.  And even if they attempted to identify such a

21   policy, there is no evidence that Defendants were deliberately indifferent to plaintiffs' rights.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**IV.**

2

**CONCLUSION**

3

For these reasons, the Court should grant Defendants' motion for summary judgment.

4

Dated:  June 23, 2016                                    Respectfully submitted,

5

ORRY P. KORB
COUNTY COUNSEL

6

7

By:  _  /S/  Karl A. Sandoval_____

KARL A. SANDOVAL
Lead Deputy County Counsel

8

9

Attorneys for Defendants
COUNTY OF SANTA CLARA, DOUGLAS
ULRICH and LAURIE SMITH

10

1342117

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28