E-FILED on 2/7/03

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SEAN ALLEN,<br>on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>Defendants. | No. C-01-21030 RMW<br><br>ORDER GRANTING DEFENDANTS' MOTION SUMMARY JUDGMENT<br><br>**[Re Docket No. 80]** |

Defendants' motion for summary judgment was heard on January 31, 2003. For the reasons set forth below, the court grants defendants' motion.

## I. BACKGROUND

This is an employment discrimination case. Following this court's December 10, 2002 order granting defendants' motion for partial summary judgement, plaintiff Sean Allen has four remaining claims against defendants County of Santa Clara ("County"), Sheriff Laurie Smith, and Undersheriff Steve Cushing . First, Allen claims that defendants discriminated against him based on race, in violation of California's Fair Employment and Housing Act, § 12900, et seq. ("FEHA"), when they failed to hire him as a deputy sheriff in June 2000. Second, Allen claims that defendants discriminated against him based on race, in violation of FEHA, when defendants terminated Allen's position as a reserve deputy sheriff in October 2000. Third,

EXHIBIT I

Allen claims that defendants retaliated against him, in violation of FEHA, by not hiring him as a deputy sheriff and discharging him as a reserve deputy after he complained about racial comments that were directed at him. Additionally, Allen claims that defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), by failing to pay him overtime for so called "pay jobs" Allen worked at when he was a reserve deputy sheriff.

**A.     Santa Clara County Sheriff's Office Hiring Procedure**

Starting in 1997, and for the first time since the late 1980's, the Santa Clara County Sheriff's Office ("Sheriff's Office") began hiring new deputy sheriffs. Because deputy sheriffs are "peace officers" under state law, in order to hire deputy sheriffs the Sheriff's Office must follow requirements and standards for hiring established by the California Commission on Peace Officer Training and Standards ("POST"). Cal. Penal Code § 31510; 11 Cal. Code Regl. § 1002. One of the requirements imposed by state law is that peace officer candidates must be shown to be "of good moral character as determined by a thorough background investigation." Cal. Gov. Code § 1031(d). Pursuant to POST requirements, in order to pass the background investigation, candidates must complete a Personal History Statement, which includes extensive questioning of the applicant's involvement with drugs, and must satisfy 15 separate criteria, including the criteria of "integrity" and "credibility as a witness in a court of law." During the 1997 through, at least, the 2000 hiring seasons, the Sheriff's Office utilized POST-certified outside contractors, specifically trained in peace officer background checks, to perform the background investigations. Sheriff's deputies, also specially trained in performing background investigations, oversaw the process. Typically, the background investigators reviewed the results of the investigation and made recommendation as to whether the candidate met all 15 POST criteria.

The full hiring process utilized by the Sheriff's Office in 2000 was as follows. The County administered a written test to all applicants. Successful applicants were referred to the Sheriff's Office. At the Sheriff's Office, applicants were required to pass a physical agility test, a background investigation, and a polygraph examination. Successful candidates received a conditional job offer and were then subjected to thorough medical and psychological examinations. Those that passed were permanently hired.

**B.     Allen's Employment With The County**

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO                                                                            2

1   Since 1994 Allen has been employed as a corrections officer with the Santa Clara County
2   Department of Correction ("DOC"). Allen has consistently received good reviews for his work as a
3   corrections officer. DOC corrections officers are not considered peace officers under state law. Cal.
4   Penal Code §§ 830.1(a); 831.5(a).

5   In 1991, Allen applied to be a reserve deputy sheriff with the Sheriff's Office. Allen was not
6   accepted. In 1995, Allen again applied to be a reserve deputy with the Sheriff's Office. In spite of the fact
7   that "there were some issues" that arose during the background investigation that may have precluded Allen
8   from being hired, Allen ultimately passed the background investigation and was hired as a reserve deputy.

9   Reserve deputies are volunteers and receive no compensation except for hours actually worked.
10  Reserve deputy sheriffs are considered peace officers under state law. In 1997, Allen completed the
11  training program required to become a Level I Reserve Deputy Sheriff. Level I reserves, while on duty,
12  have the same law enforcement powers as regular deputies including the authority to make arrests. Level I
13  reserves also have the same duties as regular deputies except that they are not to be the primary unit in
14  response to a call.

15  It is the defendants' contention that in the mid 1990's, including 1995, the time Allen was hired as a
16  reserve deputy, the Sheriff's Office's background investigations were not as thorough as those performed
17  from 1997 to the present. During the mid 1990's, the Sheriff's Office was increasing its reserve deputy
18  ranks and relied upon other reserve deputies, many of whom were not POST trained, to perform
19  background investigations on candidates for reserve deputy positions.

20  **C.    Allen's Applications For Deputy Sheriff**

21      1.      1997 Application

22  Allen applied for a deputy sheriff position in 1997. He passed the written and physical agility tests
23  and began to participate in the background investigation. Allen was rejected as a candidate for deputy
24  sheriff at the background investigation stage, and was so notified by Sgt. Larry Goodman in or about June
25  1997. According to Allen, Goodman told him that an arrest for an alleged kidnaping some years before
26  was a major reason why he had failed the background investigation. Allen requested a second review of
27  his application. Captain Roy Froom performed that second review and then notified Allen by letter that the
28

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO                                         3

decision to disqualify him was proper. Allen then spoke to Undersheriff Steven Cushing who told him that he could apply again. Allen was also encouraged to reapply by Sheriff Laurie Smith.

Sometime after defendant Laurie Smith took office as Sheriff in December 1998, Allen asked Smith to reconsider his application for deputy sheriff on the ground that the prior arrest should not have been disqualifying since Allen had been exonerated of the charge. Smith requested that Lt. Ernie Smedlund, who was the officer in charge of personnel and training, look into the matter. Smedlund asked Deputy Mark Sutherland to review the file. On or about November 18, 1999, Smedlund wrote to Smith, stating that he concurred with the decision to disqualify Allen because Allen did not meet POST criteria. Smedlund set out several areas in Allen's personal history and several problems with Allen's prior applications to the Sheriff's Office that provided a basis for disqualifying him, including failed polygraph examinations in 1991 and 1994, omissions and inconsistencies in prior applications, and several work related, domestic, and other incidents in Allen's past that raised questions about Allen's integrity.

2. 2000 Application

In or about May 2000, Allen applied again for a deputy sheriff position. Again, he successfully completed the written and physical agility tests but was disqualified at the background investigation stage. Deputy Mark Sutherland, who had reviewed Allen's file in 1999, was the background investigator in 2000. Sutherland had available to him the background materials that had been compiled during Allen's previous background investigations. Sutherland concluded that Allen was not qualified because he did not meet POST criteria. On June 12, 2000, Sutherland sent plaintiff a letter notifying him that he had been disqualified.

Allen, through his attorney, requested and was granted a "discrepancy hearing." Allen, his lawyer, Sutherland, Smedlund, and Captain Stanley Nugbauer attended the meeting. At the meeting the parties discussed concerns that the Sheriff's Office had about Allen's integrity and truthfulness including, among other things, his failure of polygraph examinations in the past, inconsistencies in statements he had made about drug use and other matters including recently uncovered accounts of possible deception in connection with Allen's applications for a concealed weapons permit. Allen offered to take a further polygraph. Following the meeting Smedlund sent Allen a letter reaffirming the disqualification and refusing Allen's offer for further polygraph testing.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO 4

### 3. Allen's Release as Reserve Deputy

Following Allen's second disqualification for the deputy sheriff position in 2000, the Sheriff's Office released Allen as a reserve deputy. According to Smedlund, the issues and concerns regarding Allen that arose during the 1999 and 2000 review of Allen's background file led Smedlund and others at the Sheriff's Office to reconsider whether Allen was suited to be a reserve deputy. Smedlund drafted a letter releasing Allen as a reserve. Cushing reviewed, signed, and sent the letter to Allen in May 2000. Up to that point, Allen had received satisfactory reviews for his work as a reserve deputy sheriff and had passed all of the required training.

### 4. Allen's Evidence of Racial Animus

Allen provides evidence, in the form of declarations and deposition testimony, that he was subjected to racial remarks on two separate occasions. First following his disqualification in 1997 Allen spoke with Goodman. According to Allen, Goodman told Allen that he was not hired because he was arrested for kidnaping. Allen contends that Goodman remarked that Allen was "no different than O.J. Simpson" and that he believed Allen should have been convicted of a lesser charge. Allen also alleges that sometime in 1999 while at the firing range he overheard Undersheriff Cushing say to other officers that "damn. . . that kid Sean Allen, that boy ran as if it was the old days and we were going after him."

Allen claims that he complained about both of these incidents to Sheriff Smith, although Smith does not recall that this occurred. These complaints did not result in a written complaint or an investigation.

## D. "Pay Jobs" As A Reserve Deputy

The Sheriff's Office will provide supplemental law enforcement services for special events to outside agencies or entities that contract and pay for those services. The Sheriff's Office will staff these "pay jobs" with deputy sheriffs and reserve sheriffs that volunteer for the extra work. Traditionally, deputies and reserves that work "pay jobs" are paid their regular hourly rate and not overtime regardless of the fact that the hours spent at a "pay job" may be in addition to their regular full-time work week. While serving as a reserve deputy, Allen worked and received payment for several "pay jobs," including jobs at Villa Montalvo, De Anza College, Cupertino High School, Saratoga Union School District, the Mountain Winery, Saratoga High School, Homestead High School, KMEL, the Santa Clara County Fair and Stanford University.

## II. ANALYSIS

**A.  FEHA Discrimination Claims**

Under California law it is unlawful for an employer to refuse to hire a person or to discharge a person because of race. Cal. Gov. Code § 12940(a). Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying California law. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000). In particular, California has adopted the three-stage burden shifting test established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) for trying claims of discrimination based on a theory of disparate treatment. Id.

Under the McDonnell Douglas test, in order to survive defendants' motion for summary judgment, the plaintiff bears the initial burden of establishing a prima facie case of discrimination[1]. Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996) (applying FEHA). The employer then must offer a legitimate nondiscriminatory reason for the adverse employment decision. Guz, 24 Cal. 4th at 355-56. Finally, the plaintiff bears the burden of proving the employer's proffered reason was pretextual. Id. at 356.

The specific elements of a prima facie case may vary depending on the particular facts. Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination or denial of an available job, and (4) some other circumstance suggests discriminatory motive. Id. at 355. For instance, in a failure to hire case, the plaintiff may establish

---

[1]  Some California courts reverse the McDonnell Douglas burden shifting scheme at the summary judgment stage, requiring the defendant to first put forward evidence of a legitimate non-discriminatory reason for the employment action at issue. see e.g., Sada v. Kennedy Med. Center, 56 Cal. App. 4th 138, 150-151 (1997). Other California courts follow the federal approach and adhere to the traditional McDonnell Douglas burden shifting framework for purposes of summary judgment. See e.g., Caldwell v. Paramount Unified School District, 41 Cal. App. 4th 189, 203 (1996). The California Supreme Court has not decided this issue. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 357 (2000). However, as courts in both the Ninth Circuit and in California have pointed out, the purpose of the McDonnell Douglas framework is to set the burden of production at the summary judgment stage and not at trial, suggesting the latter approach is correct in either forum. See Costa v. Desert Palace, Inc., 299 F.3d 838, 855 (9th Cir. 2002) ("[McDonnell Douglas] is a tool to assist plaintiffs at the summary judgment stage."); Caldwell, 41 Cal. App. 4th at 203 ("by applying McDonnell Douglas's shifting burdens of production in the context of a motion for summary judgment, the judge will determine whether the litigants have created an issue of fact to be decided by the jury.") (quotations omitted.)

1  the final prong of the prima facie case by showing that after being rejected, the position remained open and

2  the employer continued to seek applications from persons with similar qualifications. See e.g., Sada v.

3  Robert F. Kennedy Med. Center, 56 Cal. App. 4th 138, 149 (1997).

4  The burden of establishing a prima facie case is not onerous. Lyons v. England, 307 F.3d 1092,

5  1112 (9th Cir. 2002). At the summary judgment stage, the requisite degree of proof necessary to establish

6  a prima facie case is minimal and does not even need to rise to the level of a preponderance of the

7  evidence. Id.

8  Once established, the prima facie case creates a rebuttable presumption that the employer

9  unlawfully discriminated against the employee. Id. The burden of production then shifts to the employer to

10 articulate a legitimate nondiscriminatory reason for the plaintiff's rejection. Id. To accomplish this, the

11 defendants must clearly set fourth, through the introduction of admissible evidence, the reasons for the

12 plaintiff's rejection. Id.

13 If the employer sustains this burden, the plaintiff must then demonstrate that the proffered

14 nondiscriminatory reason is merely a pretext for discrimination. Id. The plaintiff can prove pretext either

15 indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is

16 internally inconsistent or otherwise not believable or directly, by showing that unlawful discrimination more

17 likely motivated the employer. Id. Circumstantial evidence of pretext must be specific and substantial in

18 order to survive summary judgment. Id. However, any indication of discriminatory motive may suffice to

19 raise a question that can only be resolved by a factfinder. Id.

20

21     1.    2000 Failure to Hire

22         a.    *Prima Facie Case*

23 Defendants contend that plaintiff cannot establish a prima facie case for his failure to hire claim

24 because (1) he is not qualified for the deputy sheriff position and (2) he has not raised an inference that race

25 was a motivating factor in his 2000 disqualification. It is undisputed that plaintiff is an African American, a

26 member of a protected class, and that he applied for and was not hired as a deputy sheriff in 2000. Since

27 the court finds that the plaintiff has failed to put forward evidence of a discriminatory motive, the fourth

28 prong of the prima facie case, the court will address that issue first.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO     7

i.     Discriminatory Motive

In order to meet the fourth prong of the prima facie case the plaintiff must put forward evidence of circumstances that suggest a discriminatory motive. There are several different ways in which this may be accomplished. In the failure to hire context, the plaintiff may put forward evidence that after he was rejected for the job, the employer left the job open and continued to consider other qualified applicants. See Sada, 56 Cal. App. 4th at 149. The plaintiff may also put forward credible evidence that the employer treated him differently than other similarly situated applicants who are not members of the protected class, that the employer hired other applicants with similar backgrounds who were not members of the protected class. See Heard v. Lockheed Missiles & Space Co., 44 Cal. App. 4th 1753, 1755 (1996). Lastly, the plaintiff may establish an inference of a discriminatory motive through other evidence, such as evidence of racial animus by the decision maker. See id.

In this case, plaintiff has not met his burden. Plaintiff does not offer evidence that the job was left open after he was rejected. Plaintiff does not offer evidence that the Sheriff's Office hired other non African American applicants who had similar problems at the background investigation stage. Plaintiff relies on a document produced by the defendants apparently showing the demographics of the Sheriff's Office personnel as of September 2000. According to this document, the Sheriff's Office employed 18 deputy sheriff cadets in 2000 none of which were African American. However, this document does not indicate when these cadets were hired, whether they were treated differently than plaintiff, or what applicant pool they were selected from. As such, plaintiff's evidence is inconclusive and does not raise an inference of racial discrimination.

Plaintiff also puts forward evidence of racial animus within the Sheriff's Office. However, plaintiff's best evidence, Allen's testimony regarding racial comments directed at or overheard by him in 1997 and 1999, does not raise an inference of racial discrimination. Racial comments in the workplace do not raise an inference of discrimination if they are stray remarks. In considering whether a comment is a stray remark, courts consider:

> 1) whether the comment is ambiguous as an indicator of discriminatory animus, 2) whether the comment is uttered by a decisionmaker (i.e., a person responsible for one of the adverse employment decisions at issue), 3) whether the comment is related in time and subject matter to the decisional process, and 4) whether there are multiple comments or only a single statement.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO                                                          8

Marques v. Bank of America, 59 F. Supp. 2d 1005, 1019 (N.D. Cal. 1999).

In this case, the alleged comments by Goodman and Cushing are not attributable to those that made the hiring decisions in 2000, are not proximate in time to or related to the decision not to hire Allen in 2000, and are single, isolated statements. See DeHorney v. Bank of American, 789 F.2d 459, 467 (9th Cir. 1989).

Plaintiff seeks to avoid this result by arguing that Goodman's comments to Allen following the 1997 hiring decision, in which he allegedly compared Allen to O.J. Simpson, raises an inference of racial motivation that can be imputed to the 2000 hiring process. Plaintiff argues that Goodman's comments to Allen in 1997 raises an inference that Goodman's decision not to hire Allen in 1997 was racially motivated. Plaintiff further argues that Sutherland's subsequent reviews of Allen's background investigation file in 1999 and 2000 necessarily involved a review of reports prepared by Goodman. Plaintiff concludes that Sutherland's conclusions in 2000 rely on and are, therefore, tainted by Goodman's improper conclusions in 1997.

However, the evidence does not support plaintiff's argument. Following Sutherland's review of Allen's file in 1999, Sutherland drafted a report. In this report, Sutherland lists the objective facts, taken from Allen's background investigation file, that caused him to conclude that Allen should not be hired as a deputy reserve. While Sutherland may have relied on and cited to the same objective facts that Goodman relied on in 1997, there is no indication that Sutherland relied on or incorporated Goodman's subjective conclusions. In fact, Sutherland's testimony reveals that his conclusions were based on an "independent review of [Allen's] file." (Sutherland Decl., at ¶ 4.) Also, testimony from Smedlund, the officer responsible for assigning the review to Sutherland, indicates that the sole reason Allen's file was reviewed in 1999 was to determine whether Goodman's "decision in 1997 to disqualify him as a candidate for deputy sheriff was adequately supported." (Smedlund Decl., at ¶ 3). Therefore, even assuming that Goodman's "O.J." comment is sufficient to taint the 1997 hiring decision, there is no reason to infer that Goodman's motivation also corrupted the 2000 hiring decision. Moreover, at no point has plaintiff contested the validity of the objective facts on which Sutherland's 2000 decision are based.

Likewise, plaintiff's claims of a hostile work environment are not sufficient to raise a reasonable inference of discrimination. Plaintiff's claims on this point are supported largely by inadmissable hearsay,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO                                                                9

such as other incidents that he "heard about," by evidence that lacks foundation, such as unsupported conclusions by Allen and other witnesses, and by otherwise stale and irrelevant evidence[2].

### ii. Qualifications

Defendant also argues that plaintiff fails to establish his prima facie case because he has not shown that he is qualified for the deputy sheriff position. Defendants contend that plaintiff is not qualified because he failed the background investigation stage of the hiring process. According to defendants, in order to be "qualified" for the job, applicants must pass the background investigation stage. This argument fails for two reasons. First, because of the low threshold required to establish the elements of the prima facie case, as long as plaintiff has some evidence that he has the objective qualifications to perform the job at issue, even if this is just his own testimony, defendants' counter evidence on this point does not refute the prima facie case. See Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1470 (1992). As the Tenth Circuit has made clear:

> The relevant inquiry at the prima facie stage is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possess the objective qualifications necessary to perform the job sought. If an employee is able to introduce such evidence, she has satisfied her prima facie burden of demonstrating that she does not suffer from an "absolute or relative lack of qualifications." Thus, a plaintiff has satisfied her prima facie burden of showing she is qualified by presenting some credible evidence that she possesses the objective qualifications necessary to perform the job at issue.

EEOC v. Horizon/CMS Healthcare Corp.. 220 F.3d 1184, 1194 (10th Cir. 2000). Second, several courts have held that consideration of subjective criteria, such as the criteria used for the background

---

[2] Allen bases his "hostile work environment" argument on evidence that is very problematic. For example, Allen testifies to an incident he "heard about" involving a Sheriff Sergeant displaying a confederate flag at the work place. This testimony is inadmissible hearsay. Allen also relies on the deposition testimony of a Lt. Luther Pugh, who testifies that "he is aware of a perception among African-Americans that there is a hostile environment against them in the Sheriff's Office." This testimony is also inadmissible hearsay and lacks foundation.
  In his supplemental opposition, Allen introduces so-called "statistical evidence." Allen puts forth evidence that in 2000 20% of the DOC's employees were black but only 4.3% of the Sheriff's Office's employees were black. However, Allen has not put forward any expert testimony to establish the significance of these statistics. Allen does not establish that these two organizations hire from the same applicant pool or whether there is any discrepancy in actual hiring rates for the relevant years.
  Allen also relies on the deposition transcript of Orlando Walker. Walker testifies that he witnessed Cushing make racially disparaging remarks in or around 1993 and 1994. However, Allen does not provide any foundation as to who Walker is. Also, Walker's testimony, even if admissible, concerns Cushing who was not involved in the 2000 decision not to hire Allen and only marginally involved in the 2000 determination to release Allen as a reserve and concerns incidents that took place in 1993 and 1994, very far removed in time from the 2000 hiring decisions.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO
10

investigation, is not proper at the prima facie stage, and should only be considered as part of defendants nondiscriminatory reasons for taking the adverse employment action, reasoning that doing otherwise would fold the stages of the McDonnell Douglas test together into one initial step. See e.g., Lynn v. Regents of the University of California, 656 F.2d 1337, 1342 (9th Cir. 1981).

In this case, the plaintiff has put forward sufficient evidence that he was qualified for the deputy sheriff position. Plaintiff was already employed as a reserve deputy sheriff, a job with largely the same duties and responsibilities as a deputy sheriff. There is evidence that plaintiff received good reviews and was able to satisfactorily perform all of his duties as a reserve deputy sheriff. While reserve deputies are volunteers that only work on an as needed basis, Allen's ability to perform as a reserve deputy at least raises an inference that he was qualified to perform as a deputy sheriff. See Sada, 56 Cal. App. 4th at 152 (1997) ("we cannot ignore Sada's evidence that she applied for the 'same job' that she was already performing at the Medical Center, albeit on a temporary, as-needed basis."). Additionally, Allen successfully completed the written test and physical agility test utilized by the County as part of the initial screening process.

### b. *Legitimate Nondiscriminatory Motivation*

However, even if plaintiff was able to establish a prima facie case, plaintiff's failure to hire claim would still fail because the defendants put forward evidence of a legitimate nondiscriminatory reason for not hiring Allen that Allen has not refuted. Defendants did not hire Allen in 2000 because he did not pass the required background investigation.

Allen did not pass the background investigation when he applied to the Sheriff's Office in 1997. The 1997 background investigation was performed by Goodman. The decision was immediately reviewed and confirmed by Froom. In 1999, as a result of inquiries made by Allen, Sheriff Smith initiated a second review of Allen's background check file. Smedlund, who was in charge of hiring during 1999 and 2000, directed Sutherland to perform a review of Allen's background file. Sutherland made a report to Smedlund who in turn issued a memorandum to Smith. According to the report and memorandum, Sutherland determined that based on the results of Allen's background investigation, Allen was not qualified to be a deputy sheriff. More specifically, Sutherland determined that Allen did not meet the criteria, among others,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO 11

1  for "integrity" and "credibility as a witness in court" because Allen gave inconsistent answers on the drug
2  questionnaire for prior applications to the department, Allen failed two polygraph tests, and there were
3  several incidents from Allen's past that raised questions about his integrity, credibility, and suitability for the
4  job. While this review attached and referred to the investigation performed in 1997 by Goodman, it
5  appears from the report as well as the corroborating testimony that the 1999 review was intended to be an
6  independent review of the facts in Allen's file. When Allen applied for a deputy sheriff position in 2000,
7  Sutherland again reviewed his background investigation file and decided not to hire Allen. Following the
8  2000 rejection, at a so-called "discrepancy hearing" requested by Allen, Allen was provided with all of the
9  reasons for his not being hired including the Sheriff's concerns over misrepresentations Allen may have
10 made while attempting to obtain a concealed weapons permit.

        *c.*     *Pretext*

Plaintiff has not put forward sufficient evidence to raise a question of fact as to whether the defendants' reason for not hiring Allen in 2000 is a pretext for racial discrimination. In his best argument, plaintiff claims that defendants' reason for disqualifying Allen is not credible because there is evidence to suggest that Allen should have been able to pass the Sheriff's Office's background investigation requirement. In support of this, Allen testifies and offers evidence that he passed similar POST background investigations in 1995 when he was hired as a reserve deputy and in 1994 when he was hired as a corrections officer for the DOC. Plaintiff also offers the testimony of Lt. Luther Pugh, in which Pugh, who had a chance to review Allen's background investigation file in 1997, offers his opinion that "there was nothing [in the file] that, by itself, was disqualifying," that the information in the file was "stale," and that "the events [described in the file] were pretty ambiguous." (Clisham Decl., Exh. E [Pugh Depo], at 55:16-25.)

However, there are several problems with plaintiff's argument. And, ultimately, plaintiff's evidence does not raise a question of fact as to the credibility of defendants' proffered reason. First, corrections officers are not peace officers under state law and, thus, are not required to meet the same standards as peace officers before being hired. So, the fact that Allen passed a background check when hired by the DOC does not indicate that he would also pass the background check required by the Sheriff's Office.

Second, defendants have put forward uncontested evidence that the background check performed on reserve deputies in 1995 was not the same as the background checks performed when Allen applied for

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO                                                12

the deputy sheriff position in 1997 and 2000. Furthermore, even if the 1994 and 1995 background checks required the same process, the 1997 investigation and 2000 review were performed by different decision makers and were intended to review Allen's suitability for a different job, the job of a full-time deputy sheriff. Additionally, the 1999 and 2000 review of Allen's background investigation file reevaluated issues that arose but were overlooked in 1995 and considered some information that arose subsequent to 1995, such as possible misrepresentations Allen made in attempting to obtain a concealed weapons permit.

Lastly, Pugh's testimony is not admissible on this point because it lacks foundation. There is no evidence that Pugh is POST certified or otherwise qualified to review and make hiring determinations based on background investigation files. Moreover, Pugh's statements, even if admissible, do not raise a question of fact as to the credibility of defendants' reason to disqualify Allen in 2000. Although Pugh disagrees with the result of the background investigation in 1997, his testimony does not suggest that the decision makers in either 1997 or 2000 did not, in fact, believe that Allen should be disqualified.

Allen makes several other arguments regarding the overall credibility of the Sheriff's Office reasons for not hiring Allen in 2000. Allen argues that Sutherland was not qualified to review the background check, that the background check was not performed properly, that Allen was treated differently than other candidates, and that the Sheriff's Office has given inconsistent reasons for why it disqualified Allen. However, Allen has not put forward specific and substantial evidence to support these points. According to the evidence, the Sheriff's Office has consistently maintained that Allen did not pass the background investigation. This determination was reviewed and confirmed on several occasions by different decision makers. There is no evidence that the Sheriff's Office would treat anybody else differently. Even if some aspects of the Sheriff's Office's conduct during Allen's background investigation is somehow improper, this is irrelevant unless it leads to an inference that the Sheriff's Office's reliance on the background investigation is a pretext for racial animus.

Allen also argues that evidence of racial animus in the Sheriff's Office suggests that its reason for not hiring him in 2000 is pretextual. However, as with the prima facie case, plaintiff's best evidence deals with incidents that occurred in 1997 and 1999 with individuals that were not part of the 2000 hiring process. Thus, this evidence is not probative of the motivation behind the 2000 rejection. Likewise,

plaintiff's other evidence of a racially hostile environment is largely inadmissable hearsay, lacking in foundation, or otherwise irrelevant to the 2000 hiring decision.

### 2. 2000 Discharge As A Reserve

For plaintiff's discharge claim, plaintiff fails to set out a prima facie case and also fails to refute defendants' nondiscriminatory motive. Plaintiff's prima facie case fails because there is no evidence of racial animus connected to the 2000 discharge. While plaintiff does have evidence that Cushing, who may have been involved in this decision, made allegedly racial comments about Allen in 1999, in which he referred to Allen as "boy," this evidence does not raise an inference of racial discrimination. Cushing's comments were not related to or proximate in time to Allen's release as a reserve in 2000, and, as such, are stray remarks that do not add up to a an inference of racial bias. See Marques v. Bank of America, 59 F. Supp. 2d 1005, 1019 (N.D. Cal. 1999).

Additionally, plaintiff cannot refute defendants' non discriminatory reason for Allen's release. According to defendants, this decision was reached after Sutherland's independent review of Allen's background file. Sutherland and Smedlund came to the conclusion that the questions regarding Allen's integrity were such that Allen should not serve as a reserve. Allen was then let go. Plaintiff has put forward no evidence that this explanation is pretext.

### B. FEHA Retaliation Claim

According to Allen, sometime before he applied for the deputy sheriff position in 2000 he complained to Smith about being called "O.J. Simpson" in 1997 by Goodman and "boy" in 1999 by Cushing. Allen contends that the Sheriff's Office did not hire him as a deputy and discharged him as a reserve in retaliation for making these complaints.

Like with FEHA discrimination claims, FEHA retaliation claims are analyzed using the three part burden shifting test set out in McDonnell Douglas. Morgan v. Regents of the University of Cal., 88 Cal. App. 4th 52, 68 (2000). However, to establish a prima facie case of retaliation, a plaintiff must show (1) that he engaged in protected activity, (2) that he was thereafter subjected to adverse employment action by his employer and (3) that there was a causal link between the two. Id. at 69. The causal link between the protected activity and the adverse employment action may be established by an inference derived from

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO 14

evidence that the employer knew that the employee engaged in protected activities and the proximity in time between the protected activity and the employment decision. Id.

In this case plaintiff fails to establish a prima facie case because he fails to produce evidence that the persons responsible for disqualifying him from the deputy sheriff position and discharging him from the reserve deputy position in 2000 knew of his alleged protected activity. Smedlund, Sutherland, Smith, and Cushing, all those that may have been involved in either employment decision, deny knowledge that he complained to Smith about racial remarks. There is no written complaint or record of a formal or informal investigation that could give rise to an inference of knowledge. The only evidence on the point is Allen's deposition testimony.

In Allen's deposition testimony, Allen states that sometime in 1999 he told Smith about the racial remarks made by Goodman and Cushing and that he believed Goodman and Cushing had "issues" with him being hired as a deputy sheriff. According to Allen, Smith encouraged Allen to reapply, told him that she would have his file reviewed, and that Goodman and Cushing would no longer be involved in the hiring process. Smith, then, asked Smedlund to review Allen's file. There is no evidence that Smith told Smedlund about Allen's complaint. Allen's file was reviewed by Sutherland in 1999 and again when he reapplied in 2000. After each review, Sutherland concluded that Allen was not qualified for the deputy sheriff position. The evidence of defendants' knowledge of plaintiff's protected activity, even if believed, does not raise an inference that the Sheriff's Office or Smith made any employment decisions in retaliation for Allen's protected activity.

**C.     FLSA Claim**

Lastly, plaintiff's claim for unpaid overtime wages fails because under the FLSA the so called "pay jobs" on which Allen worked as a reserve deputy are exempt from overtime requirements. The FLSA provides an exemption from overtime payment requirements for work performed by law enforcement employees on "special detail assignments" when (1) the special detail work is performed solely at the employee's option and (2) the special detail work is performed for a separate and independent employer. 29 U.S.C. § 209(p). However, the separate and independent employer does not need to have any control over the terms or conditions of employment of the law enforcement employees.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO                                                                           15

> The primary employer may facilitate the employment or affect the conditions of employment of such employees. For example, a police department may maintain a roster of officers who wish to perform such work. The department may also select the officers for special details from a list of those wishing to participate, negotiate their pay, and retain a fee for administrative expenses. The department may require that the separate and independent employer pay the fee for such services directly to the department, and establish procedures for the officers to receive their pay for the special details through the agency's payroll system. Finally, the department may require that the officers observe their normal standards of conduct during such details and take disciplinary action against those who fail to do so.

29 C.F.R. § 553.227. This section exempts the so called "pay jobs" at issue here.

Pay jobs administered by the Sheriff's Office are undertaken voluntarily by deputies and reserve deputies. The Sheriff's Office administers the "pay job" program consistent with the FLSA and its implementing regulations. The Sheriff's Office usually enters into a written agreement with the outside entity for each assignment. The Sheriff's Office sets the rate at which the officers will be paid and, after receiving payment from the outside entity, pays the officers through the County's payroll system. Officers working on pay jobs are off-duty from their principal employment as peace officers.

Defendants have put forward enough evidence to establish that the entities for which Allen worked on pay jobs are separate and independent for purposes of falling into the special duty exemption. In opposition, plaintiff has not offered any evidence to suggest there is a genuine issue of material fact on this point. Plaintiff claims that defendants have not established their right to this exemption because defendants have not put forward evidence that there was an "employment relationship" between Allen and each entity for which Allen performed a pay job. However, it is clear from statute's implementing regulation that such a showing is not required. The primary employer, in this case the Sheriff's Office, may legitimately retain control over all of the conditions of employment without losing the exemption as long as the job is voluntary and the actual work is performed for an outside entity.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-01-21030 RMW
KPO 16

### III. ORDER

For the foregoing reasons, the court grants defendants' motion for summary judgment.

DATED: 2/7/03              /s/ Ronald M. Whyte
                           RONALD M. WHYTE
                           United States District Judge

**Notice of this document has been electronically sent to:**

David P. Clisham davidc1787@aol.com

Martin H. Dodd mdodd@dfdlaw.com

Alexander Klibaner aklibaner@dfdlaw.com, nancy_clark@mail.cco.co.santa-clara.ca.us

William H. Sortor davidc1787@aol.com,

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 2/7/03  /s/ KPO
**Chambers of Judge Whyte**