ORRY P. KORB, County Counsel (S.B. #114399)
KARL A. SANDOVAL, Lead Deputy County Counsel (S.B. #170190)
GREGORY J. CHARLES, Deputy County Counsel (S.B. #208583)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendants
COUNTY OF SANTA CLARA, DOUGLAS ULRICH and LAURIE SMITH

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Jose)

| | |
|---|---|
| SEAN ALLEN, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>   Defendants. | No. 14-CV-03829 BLF<br><br>**COUNTY OF SANTA CLARA, SGT. DOUGLAS ULRICH AND SHERIFF LAURIE SMITH'S NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 11, 2016<br>Time: 9:00 a.m.<br>Crtrm.: 3, 5th Floor<br>Judge: Honorable Beth Labson Freeman |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

  PLEASE TAKE NOTICE that on **November 11, 2016, at 9:00 a.m.,** or as soon thereafter as the matter may be heard in **Courtroom 3** of the above-entitled Court, located at 280 South First Street, San Jose, California 95113, Defendants County of Santa Clara, Sheriff Laurie Smith and Douglas Ulrich (collectively, "Defendants") will, and hereby do, move this Court: for an order (1) enforcing the settlement agreement negotiated between the parties, (2) requiring plaintiffs to execute the settlement agreement, and (3) dismissing this case with prejudice.

//

//

//

1

1  This motion is based upon this notice, the following Memorandum of Points and Authorities, the accompanying Declaration of Gregory Charles, Esq. and its exhibits, the transcript of the Deposition of Shonda Santos dated June 24, 2016, and the entire record of this proceeding.

Respectfully submitted,

Dated: July 14, 2016

ORRY P. KORB
COUNTY COUNSEL

By:  /S/   Gregory Charles
GREGORY J. CHARLES
Deputy County Counsel

Attorneys for Defendants
COUNTY OF SANTA CLARA, DOUGLAS ULRICH and LAURIE SMITH

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................1

II.  FACTUAL BACKGROUND .....................................................................................1

III. ARGUMENT ...............................................................................................................1

    A.   THIS COURT HAS JURISDICTION TO ENFORCE THE SETTLEMENT. ........1

    B.   THE SETTLEMENT DICTATED INTO THE RECORD ON JUNE 24, 2016 IS A COMPLETE AGREEMENT. .......................................................................2

    C.   ALLEN, SANTOS, AND TRBOVICH AGREED TO THE TERMS OF THE SETTLEMENT. ...................................................................................................4

    D.   TRBOVICH IS ATTEMPTING TO RENEGOTIATE THE SETTLEMENT. ......6

    E.   ALLEN IS ATTEMPTING TO RENEGOTIATE THE SETTLEMENT. ..............7

    F.   THE COUNTY DOES NOT KNOW WHETHER SANTOS SIGNED THE AGREEMENT. ....................................................................................................7

IV.  CONCLUSION ............................................................................................................8

# TABLE OF AUTHORITIES

**CASES**

Blix St. Records, Inc. v. Cassidy
    191 Cal. App. 4th 39, 119 Cal. Rptr. 3d 574 (2010) ....................................................................... 3

Callie v. Near
    829 F.2d 888 (9th Cir. 1987) ........................................................................................................ 1

Dillard v. Starcon Int'l, Inc.
    483 F.2d  (7th Cir. 2007) ............................................................................................................. 2

Facebook, Inc. v. Pac. Nw. Software, Inc.
    640 F.3d 1034 (9th Cir. 2011) ...................................................................................................... 3

Jeff D. v. Andrus
    899 F.2d 753 (9th Cir. 1989) ........................................................................................................ 1

Maynard v. City of San Jose
    37 F.3d 1396 (9th Cir. 1994) ........................................................................................................ 2

Osumi v. Sutton
    151 Cal. App. 4th 1355, 60 Cal. Rptr. 3d 693 (2007) ................................................................... 2

United Commercial Ins. Serv., Inc. v. Paymaster Corp.
    962 F.2d 853 (9th Cir. 1992) ........................................................................................................ 2

Weddington Prods., Inc. v. Flick
    60 Cal. App. 4th 793, 71 Cal. Rptr. 2d 265 (1998) ....................................................................... 2

# I.
# INTRODUCTION

On June 24, 2016, the parties reached a settlement of the entire lawsuit. Because the parties reached the agreement during the continued deposition of plaintiff Shonda Santos ("Santos") at the Santa Cruz County Jail, defense counsel dictated the terms of the settlement into the record of the deposition. (Charles Dec., ¶3.) After being sworn, each plaintiff agreed to the settlement on the record. Although plaintiffs now refuse to sign the written agreement, the parties reached an enforceable agreement on June 24, 2016 that is properly enforced by the Court. (Charles Dec., ¶4.)

# II.
# FACTUAL BACKGROUND

On June 24, 2016, the County continued taking the deposition of Santos at the Santa Cruz County Jail, where she is incarcerated. (Charles Dec., ¶5.) Plaintiffs Sean Allen ("Allen") and Jona Trbovich ("Trbovich") were present. (Charles Dec., ¶6.) At approximately 11:30 a.m., the parties recessed the deposition and engaged in continued settlement discussions. (Charles Dec., ¶7.) At approximately 5:00 p.m., the parties reached an agreement. (Charles Dec., ¶8.) The court reporter administered oaths to Allen and Trbovich. Santos remained under oath. (Charles Dec., ¶9.)

On July 1, 2016, Deputy County Counsel Gregory Charles circulated a draft settlement document memorializing in writing the parties' on-the-record agreement. (Charles Dec., ¶10 & Ex. 2.) Allen and Trbovich refuse to sign the agreement. Defendants do not know if Santos signed the agreement.

# III.
# ARGUMENT

**A. THIS COURT HAS JURISDICTION TO ENFORCE THE SETTLEMENT.**

A district court has the power to summarily enforce an agreement to settle a case pending before it. Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989). Therefore, even though this case presents a federal question, the Court applies California law regarding the formation and

interpretation of contracts in determining whether a legally enforceable settlement agreement was reached. United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992).

California has a strong policy in favor of enforcing settlement agreements. Osumi v. Sutton, 151 Cal. App. 4th 1355, 1357, 60 Cal. Rptr. 3d 693 (2007). A settlement agreement must meet two general requirements in order to be enforceable. First, it must be a complete agreement. Maynard v. City of San Jose, 37 F.3d 1396, 1401 (9th Cir. 1994), as amended (Nov. 22, 1994). Second, the parties must have either agreed to the terms of the agreement or authorized their respective counsel to effectuate settlement. Harrop v. W. Airlines, Inc., 550 F.2d 1143, 1144–45 (9th Cir. 1977). As long as a "meeting of the minds" has been reached as to the essential terms of the settlement, it is enforceable, even should a party later refuse to sign. Dillard v. Starcon Int'l, Inc., 483 F.2d 502 (7th Cir. 2007) (enforcing oral settlement where parties disagreed over terms to be included in final settlement agreement.)

**B.     THE SETTLEMENT DICTATED INTO THE RECORD ON JUNE 24, 2016 IS A COMPLETE AGREEMENT.**

A proposal for compromise can be accepted, and accordingly form a complete agreement, if its terms are reasonably certain. Weddington Prods., Inc. v. Flick, 60 Cal. App. 4th 793, 811, 71 Cal. Rptr. 2d 265 (1998). In order to be binding, a settlement need only be sufficiently definite to enable a court to give it meaning. Id.

On the record of the Santos deposition, counsel for retired Sgt. Morin stated, "The purpose of this transcript is to confirm the settlement that has been reached between each of the plaintiffs and all of the defendants." (Charles Dec., Ex. 1, p. 3:2-5.) Deputy County Counsel Charles then dictated the material terms of the settlement into the record:

1. The County of Santa Clara will make a single payment of $600,000 to plaintiffs' counsel (Charles Dec., Ex. 1, p. 3:9-10);

2. The payment is due thirty days after the execution of a written settlement agreement by plaintiffs (Charles Dec., Ex. 1, p. 3:11-13);

3. The settlement includes a full release "by each plaintiff of the County, each defendant in this proceeding, all County-elected officials, all County employees and all former

1 | County employees. The release includes any claim, asserted or not, that plaintiffs could possibly have against the County or any of its employees that exists up to the moment of the settlement." (Charles Dec., Ex. 1, p. 3:14-24);

4. Santos and Trbovich will never seek employment with the County of Santa Clara (Charles Dec., Ex. 1, p. 3:25-4:2);

5. The Department of Correction will place Santos in the Custodial Alternative Supervision Unit ("CASU") program, but only if she meets "all requirements of the program." (Charles Dec., Ex. 1, p. 4:3-4);

6. The County will allow Trbovich to resign employment effective as of the date of her termination by the County. (Charles Dec., Ex. 1, p. 4:5-7);

7. The County will remove "three reprimands and a four-day suspension" from Allen's personnel file (Charles Dec., Ex. 1, p. 4:8-16); and

8. This Court has jurisdiction to enforce any of the aspects of the settlement agreement. (Charles Dec., Ex. 1, p. 4:19-20).

That the parties agreed a formal written agreement would be signed (Charles Dec., Ex. 1, p. 3:11-13 - "The payment shall be made within 30 days of the execution of the settlement agreement") does not alter the validity of the agreement. Blix St. Records, Inc. v. Cassidy, 191 Cal. App. 4th 39, 48–49, 119 Cal. Rptr. 3d 574 (2010). California law permits binding agreements even if the parties anticipate execution of a formal agreement. Facebook, Inc. v. Pac. Nw. Software, Inc., 640 F.3d 1034, 1038 (9th Cir. 2011).

The Facebook opinion is particularly instructive. After a day of negotiations, the parties signed a handwritten "Settlement Agreement" specifying that the deal was binding and subject to enforcement. When negotiations faltered regarding the written agreement, Facebook filed a motion to enforce the agreement. One of the parties argued that the agreement was unenforceable because it lacked material terms and had been procured through fraud.

The district court enforced the settlement, and the Ninth Circuit affirmed. If the terms are sufficiently definite for a court to determine the parameters of the agreement, the agreement is binding, even if the parties "understood that some material aspects of the deal would be papered

1  later." Id. at 1038.

2        Here, the terms dictated into the record include monetary and non-monetary consideration.

3  The settlement also included a dismissal of this proceeding and a release of all claims that plaintiffs

4  "could possibly have against the County or any of its employees that exists [sic] up to the moment of

5  the settlement." (Charles Dec., Ex. 1, p 3:22-24.)  Because the terms are definitive and complete, the

6  settlement dictated into the record is a binding agreement.

7  **C.  ALLEN, SANTOS, AND TRBOVICH AGREED TO THE TERMS OF THE SETTLEMENT.**

8

9        After stating the terms of the settlement, Deputy County Counsel Charles clarified the intent

10 of the parties:

11       The intent of the parties, everyone involved in this lawsuit, the County and the plaintiffs, is that the agreement that we reached today is an

12       enforceable agreement, so by agreeing to the settlement on the record today, you have in fact agreed to the binding settlement agreement,

13       and you will not be able to back out of the settlement once you agree on the record.

14
      Now I'm going to ask your attorney to voir dire you, which means that

15       he's going to ask you to identify yourself on the record and state that you agree to all of those terms that I have just recited today.

16

17 (Charles Dec., Ex. 1, p. 4:24-5:9.)

18       Mr. Benjamin then queried each plaintiff.  After Mr. Benjamin clarified that Trbovich was

19 free to seek employment from any public employer that offered CalPERS benefits, except the

20 County, Trbovich agreed to the settlement.  (Charles Dec., Ex. 1, p. 6:2.)

21       Santos also sought clarification regarding re-employment.  (Charles Dec., Ex. 1, p. 4:4-6.)

22 Messrs. Benjamin and Charles clarified that Santos would never seek employment as a County

23 employee, but she was free to seek employment by any other county.  (Charles Dec., Ex. 1, p. 4:7-

24 25.)

25       Santos then sought a guarantee that she would be placed in the CASU program.

26       MR. CHARLES:  I don't know what the mediator told you, but this is what we're willing to do.

27
      MS. SANTOS:  Which is?

28

4

1  |  MR. CHARLES: Put you in the CASU program if you meet the eligibility terms of the program. One of the eligibility requirements of the program is that you live in the County.

(Charles Dec., Ex. 1, p. 9:24-10:5.)

Santos persisted in wanting a commitment that the County would bend the rules of the CASU program, but Deputy County Counsel Charles stated, "I'm not going to make that commitment to you right now." (Charles Dec., Ex. 1, p. 10:16-17.) Santos then wanted to defer the issue to a later date, but Mr. Benjamin explained to Santos that she could accept or refuse the offer as it was made:

> MS. SANTOS: Can we not leave that –
>
> MR. BENJAMIN: No. You're taking the deal or you're not taking the deal. We already had the conversation in the other room.
>
> So are you accepting the terms, Shonda?
>
> MS. SANTOS: All right, I'll accept the terms.

(Charles Dec., Ex. 1, p. 10:18-23.)

Without asking any questions, Allen accepted the settlement. (Charles Dec., Ex. 1, p. 10:24-25.)

After Deputy County Counsel Charles stated the terms of the settlement on the record and Mr. Benjamin obtained the consent of his clients under oath, counsel for retired Sgt. Morin confirmed that the parties reached an agreement:

> MR. RUIZ: All right. I think we've fully explored this. I think Mr. Benjamin and everyone did a very good job here putting this together.
>
> So thank you all. It's done. (Charles Dec., Ex. 1, p.11:1-4.)

Allen, Trbovich, and Santos were present with Mr. Benjamin when Deputy County Counsel Charles stated the terms of settlement, and each had an opportunity to ask questions regarding the terms. Santos and Trbovich asked a series of questions that were satisfactorily answered on the record. Further, plaintiffs met privately with their counsel for several hours between the time when the deposition recessed at 11:30 a.m. and the settlement was dictated into the record at 5 p.m. Thus, each had ample opportunity to discuss the terms of settlement with Mr. Benjamin. Further, Mr. Benjamin indicated on the record that he and Santos had in fact discussed the terms of the settlement

in private. (Charles Dec., Ex. 1, p.10:20-21.) Since Allen, Santos, and Trbovich agreed to the settlement under oath while represented by counsel, the settlement is binding and enforceable.

**D.   TRBOVICH IS ATTEMPTING TO RENEGOTIATE THE SETTLEMENT.**

The County terminated Trbovich on June 28, 2013 because she had a sexual relationship with a convicted felon whom she supervised while he was in custody. (Charles Dec., ¶ 13 & Ex. 4.) The termination was effective July 3, 2013. (Id.) Trbovich grieved the termination to arbitration. On March 18, 2014, Arbitrator Norman Brand sustained the termination. (Charles Dec., ¶ 14 & Ex. 5.) The award states:

1.   The County of Santa Clara had just cause to terminate Jona Trbovich.

2.   The grievance is denied.

(Charles Dec., Ex. 5, p. 14.)

Trbovich will not sign the settlement unless the County changes her date of termination from June 28, 2013 to March 18, 2014, the date when the arbitrator sustained the termination. Mr. Benjamin explained Trbovich's reasoning:

> At present, Jona will not agree to sign anything unless the date of resignation reflects the date of the Norman Brand decision. My hope is that the County will agree to this since no termination is final, if grieved, until the arbitrator has actually made a decision on the grievance. In Jona's mind, these extra months help her as she searches for new employment.

(Charles Dec., Ex. 3.)

Trbovich probably has an alternative motive. If her resignation in lieu of termination were post-dated 8 ½ months, Trbovich's CalPERS retirement benefits might be significantly enhanced. Trbovich's motives, however, are irrelevant. The transcript clearly states:

> Ms. Trbovich, you will be allowed to resign employment effective as of the date of your termination from the County. (Charles Dec., Ex. 1, p.4:5-7.)

Since the settlement did not include moving her termination date from June 28, 2013 to March 18, 2014, Trbovich cannot refuse to sign the agreement. As to Trbovich, the motion is properly granted.

/ /

**E.  ALLEN IS ATTEMPTING TO RENEGOTIATE THE SETTLEMENT.**

Refusing to sign the agreement, Allen also raises new issues that were never discussed. Mr. Benjamin's July 5 email explains Allen's position.

> Sean is refusing to sign because he is not clear on whether he will actually be made whole by the removal of the discipline and written/verbals in his file. For example, he explains that he needs confirmation that his seniority will be restored with the removal of the suspension. Is there someone in Labor Relations or HR that can discuss this with him? I explained that we are unlikely to get that language in the Agreement at this hour, but he will accept confirmation of the impact of this improvement in his file if someone will confirm it for him.

(Charles Dec., Ex. 3.)

If Allen had these concerns, he could have raised the issues during the settlement negotiations. Since Allen agreed to the settlement under oath and the transcript does not include these newly raised issues, Allen's after-the-fact concerns are irrelevant. Mr. Benjamin's concession that the settlement does not include these considerations (Charles Dec., Ex. 6) demonstrates that the motion as to Allen must be granted.

**F.  THE COUNTY DOES NOT KNOW WHETHER SANTOS SIGNED THE AGREEMENT.**

Mr. Benjamin has not indicated whether Santos is willing to sign the agreement, but she agreed to the settlement under oath after asking many questions regarding its terms and Mr. Benjamin's confirmation on the record that he discussed the agreement with Santos in private.

After the parties dictated the settlement into the record, Santos' former spouse (who was the victim of her theft of child support and perjury) emailed the Honorable Socrates P. Manoukian, the judge who presided over Santos' criminal trial. Mr. Santos objected to Santos being placed into any type of early release program.[1] Judge Manoukian did not respond to the email but forwarded it to the prosecuting deputy district attorney and Santos' criminal defense attorney, Darryl Stallworth.

Upon request of the district attorney, Judge Manoukian set the matter for hearing to determine if Santos is eligible for an early release program. The matter will be heard on July 28,

---

[1] Defendants are informed that Mr. Santos learned of the settlement from friends of Trbovich.

7

2016, but it has no bearing on this motion.

Even if the Superior Court determines that Santos is not eligible for an early release program, the settlement is still enforceable. Although Santos sought a guarantee, the County only agreed to place Santos in CASU if she met all requirements of the program. There was no guarantee, and the settlement was not contingent upon placement of Santos in the program. Therefore, the motion as to Santos must be granted.

## IV.

## CONCLUSION

For these reasons, the Court should enforce the settlement and order Allen, Santos, and Trbovich to sign the agreement. (Charles Dec., Ex. 2.)

Respectfully submitted,

Dated: July 14, 2016   ORRY P. KORB
COUNTY COUNSEL

By: /S/ Gregory J .Charles
GREGORY CHARLES
Deputy County Counsel

Attorneys for Defendants
COUNTY OF SANTA CLARA, DOUGLAS ULRICH and LAURIE SMITH

1352935